# N. A. MORRIS v. STATE.

No. A-5551.   Opinion Filed June 19, 1926.
(247 Pac. 418.)

L. A. Wallace and D. E. Ashmore, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Randell S. Cobb, Asst. Atty Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter

called defendant, was informed against for murder in the superior court of Okmulgee county, convicted of manslaughter in the first degree, and sentenced to the state penitentiary for a term of 15 years.

The record discloses a state of facts about as follows: The deceased, Floyd Williamson, had married a sister of the defendant about 3 years prior to the homicide. They had one child about 2 months old. During most of the time of the marriage, the deceased and wife had lived with the wife's parents, as did also the defendant and other brothers. There was no evidence of any trouble between the deceased and his wife, although at the time of the trial she had remarried, and her testimony bears indications of a desire to assist her brother, the defendant.

About 3 weeks prior to the homicide, deceased had left the residence of his wife's parents to find work elsewhere. At that time there was not the best of relations between him and the brothers of his wife, due to financial differences, and to the fact that deceased had received a letter signed "K. K. K.," which he suspected had been sent him by his brothers-in-law. The deceased returned to Henryetta, the place of residence, on Friday, May 4th. That night he went to the residence of his wife's parents, where she resided, and evidently sought to see his wife. He scratched on the screen of her window, and the defendant went out, and deceased and defendant shot at each other. The Monday following deceased met his wife at the railroad tracks, and they visited each other for an hour on the best of terms. He told her he was coming to see her that night, and she warned him not to do so. About 8 or 9 o'clock that night he came to the back yard, met his wife, and they talked and visited for some time. The defendant at the same time was searching for the deceased, and had notified the police at Henryetta, who had answered his call, and were near the place when they heard the shot fired that killed

dceased. When defendant came upon deceased and his wife in the back yard, deceased had drawn a bucket of water, and had just taken a drink, and defendant appeared, flashed a light upon him, and said, "The law wants you." Deceased immediately pulled his wife between himself and defendant, and made an effort to reach for a stick used in doing the family laundry which was lying on a box near, but did not get hold of it. The wife screamed, and defendant shot the deceased behind the right ear, from which he died almost instantly. One witness who came to the scene immediately after the shot testified that the defendant said: "He started to run and I shot him."

The chief of police testified that he was near, and heard the shot, and went to the scene immediately, and defendant said to him: "Here he is." Defendant then started to leave, and the police officer followed, and asked how the killing occurred, and defendant then said:

"Told him to stop, that the law wanted him. He starts to leave. His sister had come between him and this fellow. Knocked a flash light out of his hand. He had reached for a stick. He knocked it down. He started to leave and he had shot this man."

There was other evidence that the wife of deceased, sister of defendant, at the time said:

"You killed my husband. You killed him. Killed him, uncalled for,"
—and:

"Was not any trouble. Came to see me and the baby, and had started away and he shot him."

The defendant testified that there had been some trouble between him and deceased, and threats had been made by deceased which had come to his knowledge, that they had exchanged shots on the Friday night preceding the homicide, and described the homicide as follows:

"He had drawn up a bucket of water. He was

drinking it, I suppose, just set his bucket down when I went up. I started around the house when I noticed something at the well—some one there at the well. Threw my spot light on him, and saw it was him. I said: 'The law wants you.' He grabbed my sister, pulled her in between me and him. He was just setting the bucket down from getting a drink. I started around the house, was aiming to go get the officer, that was my intention. I noticed some one at the well. I said, 'Floyd, the law wants you.' He pulled my sister in between me and him, and kept sidling along toward this box about eight feet from the well, right due west. I kept my light on him, and my sister threwed her hand up over the light, and pushed it down, and my brother said: 'Put your light back on him, or he will kill you.' He got around towards this box where this club here was laying and some rocks and some more stuff. Got around in this position, so this grape arbor—here is one side, here is the well right here; right here is where the box sets; the orchard runs straight on down here; the other fence over here. I am standing right by the well; he was still out here between me and the well. When he reached for the club, that throwed me right here. He was out over behind her. I still had my light on him. When he reached over there, I hit him, shot him, right there, by his ear. Drug this club down right there, and dropped it. He whirled around and fell, with his feet here, his head here, his feet up this way, by the corner post of the well."

It is assigned as error that the court unduly limited the right of cross-examination of the wife of deceased concerning the difficulty on the Friday night preceding, in violation of the rule of law announced in the case of Spear v. State, 7 Okla. Cr. 379, 123 P. 852, and Hopkins v. State, 9 Okla. Cr. 104, 130 P. 1101, Ann. Cas. 1915B, 736.

The general rule is that the cross-examination of a witness is not to be confined to the particular questions asked nor the precise subjects called to his attention, but the right of cross-examination should be liberally construed to allow the examination of a witness to extend to any matter not foreign to the subject-matter of the examination

which reasonably tends to explain, contradict, or modify the testimony of a witness, or to test his accuracy, memory, oversight, character, or credibility. This witness was not asked on direct examination anything about what had occurred on the Friday night preceding. If she had any knowledge of any recent difficulty between the defendant and deceased, it was competent, but her testimony discloses that she did not see deceased at that time, and had no personal knowledge that he was there. Further than that, the evidence on this point was fully covered by the testimony of defendant and others; the matter was before the jury; and no prejudice could have resulted.

It is further argued that the court erred in refusing to permit the defendant to show by cross-examination of the wife of deceased that she had warned him to stay away from the premises. The witness was permitted to testify that deceased was warned, but an objection was sustained to her reason for so informing him. The record does not show, nor is any contention made, that deceased was not fully aware that his presence at the residence of his wife's parents was resented by her brothers, including the defendant, and that he had been warned by his wife not to return there. Her reasons for warning him were not particularly important, and were properly excluded, for, though warned to stay away, his going there in a peaceable manner to meet his wife and child did not justify the defendant in killing him.

It is next argued that the court erred in permitting the state to impeach its witness Donovan as to some conversation that took place at the premises immediately after the killing. Donovan lived near the premises, and went there at once after the shooting. At the preliminary he testified that he heard defendant make certain statements. At the trial he appeared to be an unwilling witness and testified he did not remember any statements made. Counsel for

the state thereupon, to refresh his recollection, read to him a question and answer made by him at the preliminary, and asked if it was correct, and he answered, "Yes." It is permissible to refresh the recollection of a witness by directing his attention to the statements previously made or to his former testimony, particularly where it appears that the witness is trying the evade the questions or is unfriendly toward the party calling him as a witness. 40 Cyc. 2450; Gardner v. State, 5 Okla. Cr. 531, 115 P. 607; People v. Izlar, 8 Cal. App. 600, 97 P. 685.

The purpose of cross-examination is to develop the truth, and there should be no undue technicality to prevent the eliciting from a witness the real facts whether his reticence on the stand is due to reluctance or forgetfulness. The contention on this point is not tenable.

Complaint is next made that the court erred in refusing to permit the mother of defendant to testify that deceased had made threats against defendant and his brother. Naturally, this witness was an extreme partisan, and, under leading questions propounded by counsel for defendant, testified to conclusions, and stated that threats had been made against her boy by the deceased. The objection was sustained only to the leading character of the questions, and not to the admissibility of the threats and the fact of their line of testimony to be fully developed. Under this assignment it is also urged that the court commented upon the weight of the testimony in regard to threats. The court in his remarks verged on a comment on the weight of evidence, but the particular remark complained of appears to be a reference to uncommunicated threats, and more particularly had reference to the brothers of the defendant. This error is not of sufficient importance to require a reversal.

Complaint is next directed to the court's instruction No. 10, which is as follows:

"The jury are instructed that the defendant in this case is presumed to be innocent of the crime charged in the information, and this is a presumption of law that remains with him and is thrown around him for his protection up to the moment when the killing is proved or admitted. When the killing is proved or admitted by the defendant, and the plea of self-defense is interposed, as in this case, it then devolves upon the defendant to show any circumstances of mitigation to excuse or justify it by some proof strong enough to create in your minds a reasonable doubt of his guilt of the offense charged, unless the proof on the part of the state shows that the defendant was justified in committing the act."

It is contended that this instruction deprived the defendant of the presumption of innocence, and shifted to him the burden to prove that he acted in his self-defense, and that the facts proven show circumstances of mitigation or justification. This instruction is based on section 2719, Comp. Stat. 1921, which is as follows:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

This instruction was approved in the case of Culpepper v. State, 4 Okla. Cr. 103, 111 P. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668. Under the law as stated in section 2719, supra, this instruction was proper, and it was for the jury to determine whether or not the circumstances were sufficient to show mitigation or justification. It is not for the court to assume as a matter of law. See, also, Jones v. State, 20 Okla. Cr. 233, 202 P. 187; Stribling v. State, 18 Okla. Cr. 48, 192 P. 590.

Lastly, it is argued that the evidence does not sustain the verdict. From what has been said touching the facts, it is evident that testimony adduced by the state showed that

the deceased went unarmed to the place where his wife and child resided for the purpose of seeing them, and, when accosted by defendant, attempted to shield himself by pulling his wife between them, and that, at least, he was unnecessarily killed by defendant without any reason for believing at the time on the part of the defendant that he was about to receive serious bodily injury at the hands of the deceased. The evidence for the state clearly established a case of manslaughter in the first degree.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.