Charles Thomas CANTRELL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14556.

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1969.

Jim Jones, Sallisaw, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Reid Robison, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, Charles Thomas Cantrell, hereinafter referred to as the defendant, was charged by information in the District Court of Oklahoma County with the crime of Arson Second Degree, case no. 32954. The defendant came on for trial by jury on June 5, 1967, before the Honorable Jack R. Parr, District Judge, and a verdict was returned on June 7, 1967 finding the defendant guilty and assessing his punishment at Five Years imprisonment. Motion for new trial was overruled, and judgment and sentence was imposed on June 16, 1967, in accord with the jury verdict, and an appeal therefrom has been perfected.

The facts in this case involve a fire which destroyed the Del City home of the defendant on January 22, 1967, at approximately 3:00 a. m., the same being a Sunday. The State called two firemen, a representative of the Oklahoma State Fire Marshal's Office, and a Del City police officer who investigated the scene of the fire. Substantially, their testimony was to the effect that kerosene soaked papers had been found under the furniture in the home; that the fire apparently originated in a hall closet; that it was not likely that the heat-ing system had malfunctioned causing the fire; that the accused stated he and his family were gone to visit relatives on the week-end of the fire, taking "furnishings with him for the week-end"; that certain items reported missing by the defendant and his wife were later found in Sallisaw, Oklahoma, at the home of defendant's wife's parents. An agent of the Oklahoma State Bureau of Investigation testified that his analysis of articles taken from the scene of the fire indicated kerosene.

The State called Robert Cantrell, the eighteen-year old son of the defendant, who testified substantially that he and his younger brother, in one car, traveled with his parents, in another car, to Sallisaw to the home of defendant's parents on the Friday before the fire; that he had gone on alone to Muldrow, Oklahoma, the next morning [Saturday] to the home of defendant's wife's parents; that he remained in the company of his cousin for the duration of the day and evening; and that about 3:00 Sunday morning he was awakened by a call from Mrs. Howard Kirksey, telling him that their home in Del City had been burned. Robert Cantrell and his cousin then left the home of his mother's parents, where they had been sleeping, and went to the home of his father's parents in Sallisaw to inform them of the fire. Robert Cantrell then testified that upon arriving at his grandparents' home in Sallisaw, those present included his grandmother, little brother, and parents, although he did not see his father. After some further examination, the prosecuting attorney asked and received permission of the trial court to lead the witness on direct examination because of the surprise as to his testimony. Robert Cantrell then testified that his father was not at his grandparents' home in Sallisaw when he arrived shortly after 3:00, and that he did not see him until about 6:00 a. m. the same morning; that he saw his father unload a stereo at his grandmother's house on Friday after coming from Del City; that his mother asked him to lie to protect his fa-

ther; and that although he did not get along with his father, he did love him.

The defense was one of alibi. Defendant testified substantially that he left Oklahoma City on Friday with his family and did not return until early Sunday morning after the fire; that he was in Sallisaw having his car repaired on Saturday morning; and that from 5:00 p. m. Saturday until notified of the fire, he was at the home of his mother in Sallisaw with his family. Defendant's wife testified that she came to Sallisaw on Friday evening, Januuary 20, 1967, with the defendant. That she was in his presence Saturday evening and Sunday until they returned to Del City, and that she had packed the missing articles from their home, which they brought to Sallisaw and Muldrow, without the knowledge of the defendant. Defendant's wife's father testified that the defendant spent the entire day Saturday, January 21, 1967, with him until approximately 4:00 p. m. Defendant's mother testified that the defendant was at her home in Sallisaw from approximately 5:00 p. m. on Saturday until notified of the fire by defendant's son Robert. Defendant's younger son, James Andrew Cantrell, testified as to his father's whereabouts late Saturday evening and early Sunday morning at the time of the fire.

In rebuttal, the State called Lucy Guin, who testified that she saw the defendant and another person in defendant's car leaving defendant's home in Del City between the hours of 9:00 and 11:00 A.M. Saturday, January 21, 1967. It is noted that the testimony of approximately five witnesses placed the defendant in Sallisaw having his car repaired at the time Mrs. Guin said she saw the defendant in Del City.

 It is apparent from a review of the evidence that there is a substantial conflict from which different conclusions could be drawn. Although the evidence is less than conclusive that the defendant committed the crime of arson, there is sufficient basis upon which the jury could conclude that the defendant was guilty. This Court

held in Woods v. State, 92 Okl.Cr. 53, 220 P.2d 463 [1950]:

"Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh evidence and determine the facts."

"The function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis, in evidence, on which jury can reasonably conclude that accused is guilty as charged." 220 P.2d, at 464.

Although defendant cites several generalized assignments of error, he argues and cites authority in support of only one contention. It is the rule of this Court as announced in Fryar v. State, Okl.Cr., 385 P.2d 818 (1963):

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred."

We therefore, direct our attention to the single issue on appeal supported by argument and citation of authorities. It is defendant's contention that the trial court committed error when it allowed the prosecuting attorney to plead surprise and ask the witness, Robert Cantrell, leading questions. The record in this regard reads as follows:

"Q. Did you have a conversation with Carol Kirksey about the stereo?

A. I don't remember if I did or not. I may have.

MR. COOPER: [prosecutor] May we approach the bench, Your Honor?

THE COURT: Yes.

(Whereupon, a discussion was had off the record.)

MR. COOPER: At this time the state would plead surprise and ask permission to lead the witness on direct examination

in order that I may ask him specific questions to which I have been informed that his—well, this is not what I have been told and I would like to ask him about specific incidents and I need a proper predicate.

(Whereupon, a discussion was had off the record.)

MR. JONES: [defense counsel] We object to this. This boy is under subpoena. He was brought here as my witness and now they have called him. I don't see how they are entitled to surprise.

(Whereupon, a discussion was had off the record.)

THE COURT: I think in view of the relationship between this witness and the Defendant it will be all right." (cm 121, 122)

The witness, Robert Cantrell, [had previously stated that he did not see his father when he went to his grandmother's house to inform them of the fire] under leading questions then acknowledged that when he went to his grandmother's house to inform his parents of the fire his father was not there; that on Friday he saw his father unload the stereo at his grandmother's house; and that his mother had told him that if he related certain facts, his father would go to jail.

 Defendant's counsel now argues that the trial court improperly allowed the prosecuting attorney to lead, cross-examine, and impeach his own witness and cites the case of Chambless v. State, 90 Okl.Cr. 423, 214 P.2d 947, as authority that there must a showing of surprise for counsel to impeach his own witness.

In Pettigrew v. State, Okl.Cr., 346 P.2d 957 (1959) this Court held:

"Where a party has placed a witness upon a witness stand believing he or she will testify to a given state of facts by reason of testimony given or statements made, and the witness then tesifies to a different state of facts injurious to the party calling said witness and in conflict with her previous testimony or state-

ment, the party placing such witness upon the stand may impeach his or her testimony. This may be done upon the ground of surprise and to explain the placing of the witness upon the stand and to counteract the injurious effect of his or her testimony."

However, even more relevant in the instant case than whether a counsel can impeach his own witness, is whether counsel may be allowed to lead a witness on direct examination. We think the law in this regard is well stated in the case of Morris v. State, 35 Okl.Cr. 5, 247 P. 418 (1926):

"Where a witness called by a party and examined by him is unfriendly, or appears to evade the questions asked, or to have a lapse of memory, it is in the discretion of the trial court to permit the party to ask leading questions, or to refresh the recollection of his own witness."

In Gullatt v. State, 80 Okl.Cr. 208, 158 P. 2d 353 (1945), this Court held:

"Leading and suggestive questions should not be asked a witness by the party placing her upon the stand. An exception to this rule of law is where the witness proves hostile to the party calling him and friendly to his adversary, or where the witness is trying to evade the questions asked. Then, trial court in its discretion may permit leading questions to be asked."

In the instant case, the prosecuting attorney announced surprise at the witness' testimony and asked permission to lead the witness on direct examination. Although the record does not disclose the discussion had before the judge or indicate what showing of surprise was made, we are of the opinion that the trial court acted within its sound discretion in allowing the prosecution to ask leading questions of the witness, particularly in view of the fact that the witness was the son of the defendant. A review of the record indicates that the witness, Robert Cantrell, was trying to evade certain questions put to him by the prosecution. Accordingly, we find the trial court

**346**

acted within its sound discretion and there is no indication of an abuse of discretion by the trial court which would constitute reversible error.

Having rejected the single contention of the defendant raised on appeal finding no fundamental error in the record, and finding some basis in the evidence on which the jury could reasonably conclude the accused guilty as charged, we are of the opinion that the judgment and sentence should be, and the same is, hereby affirmed.

BRETT, P. J., and BUSSEY, J., concur.