Charles "Pat" PATTERSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–258.

Court of Criminal Appeals of Oklahoma.

Sept. 4, 1974.

Rehearing Denied Oct. 31, 1974.

Robert W. Pittman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge.

Appellant Charles "Pat" Patterson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Comanche County, Case No. F–73–322, for the offense of Delivery and Distribution of Heroin, After Former Conviction of a Drug Offense. The jury fixed his punishment at forty (40) years impris-onment and a fine of Forty Thousand ($40,000.00) Dollars, and from said judgment and sentence a timely appeal has been perfected to this Court.

The evidence introduced at trial on behalf of the State presented the following version of the facts. On March 6, 1973, one Steven Bonner, also known as Steven Humphrey, also known as "Tina," a homosexual transvestite, was arrested in Lawton, Oklahoma for Impersonating a Female, Soliciting for Prostitution, and Associating with a Known Prostitute. At the booking desk at the Lawton Police Department, Bonner approached arresting officer Dean Nowe with an offer to aid in Officer Nowe's narcotics investigations in return for leniency in the above-mentioned charges against Bonner. Nowe agreed and proceeded to set up a dope "buy" from defendant Patterson, using Bonner as the informant. On March 17, 1973, the attempted buy took place as follows. At approximately 9:00 a. m., Officers Nowe and Jim Ingram, driving a Chevrolet automobile, picked up informant Bonner at a residence in Lawton after Bonner had failed to appear at their pre-arranged meeting place. The three then went to an apartment complex where Mr. Nowe picked up a Plymouth automobile and drove it to a shopping center in another part of Lawton where he parked and locked it. The two officers and Bonner then went to Southwestern Hospital in the Chevrolet. There, Dr. French Worthen conducted a thorough body search of Bonner, in order to determine that Bonner did not have any narcotics secreted on his person, prior to the attempted buy. Officers Ingram and Nowe searched the female clothing in which Bonner was dressed. No narcotics were discovered in either search. At the same time, the officers attached a "bugging" device to Bonner's chest, where it was concealed beneath his female attire. They then accompanied Bonner back to the shopping center. There they were met by John Lavick, a Southwestern Bell Telephone Company employee, whose phone company

panel truck was to be used by the officers to conceal the "bug's" receiver while Bonner was making the buy. At that point, Officer Nowe unlocked and searched the Plymouth which he had earlier left at the shopping center. Finding no drugs in the car, he put Bonner behind the wheel and gave him $30.00 with which to make the buy. Officer Ingram, in the Chevrolet, followed Bonner to defendant's house and parked nearby. Officer Nowe and Mr. Lavick drove to a driveway across the street from defendant's house and set up the electronic receiving device. When Bonner arrived at defendant's house, he was admitted through a garage door by defendant himself. Present inside the house were defendant, Bonner, and an otherwise unidentified individual named "Queenie." The State's version of the transaction inside the house was presented at trial first through the testimony of Bonner.

At first, Bonner testified that he had not made a heroin buy from defendant as alleged. After a short in camera hearing, the District Attorney asked Bonner if he appreciated that he was testifying under oath. After answering in the affirmative, Bonner changed his version of the transaction to the following: upon entering defendant's house, he gave defendant the $30.00 which had been given to him by Officer Nowe. In exchange, defendant gave Bonner two small tinfoil packages of heroin. While inside, Bonner also injected himself with one of the two packets of heroin.

The only other version of the events inside defendant's house, presented by the State, was that portion of the conversations overheard by Officer Nowe on the electronic receiver. He testified that he heard three voices, one of which he identified as that of Bonner, one as that of the defendant, and one as that of an unidentified person. The conversation which he overheard, along with the individuals whom he identified as the speakers, was as follows:

BONNER: "Where is Queenie?"

DEFENDANT: "In the bedroom."

BONNER: "Give me a cigarette. You want to go to work today—you want to go to work?"

UNIDENTIFIED: "Yes. I want to go to Brookings and get some coats."

DEFENDANT: "I have been trying to get Queenie to get me some leather pants."

BONNER: "Where's Mamie?"

DEFENDANT: "Down at the Ice Dock."

BONNER: "What are you cooking?"

DEFENDANT: "I am making some coffee."

BONNER: "I sure hope Pat's got some stuff and he'll sell me some. I have been . . ." [objection at this time sustained by trial court]

\* \* \* \* \* \*

BONNER: "Would you sell me something for my nerves? I want to get two papers."

UNIDENTIFIED: "What are you copping for?"

BONNER: "Thirty dollars, right?"

DEFENDANT: "Yeah."

BONNER: "Ten, twenty, twenty-five, thirty."

Nowe stated that the above portion of the conversation was only a partial one, and that he had been unsuccessful in his attempt to tape record the conversation due to his failure to operate the tape recorder correctly. Officer Nowe also testified that he observed defendant emerge briefly from the house during the transaction and "give a close look" to the Plymouth parked in his driveway. Shortly after defendant had re-entered the house, Bonner emerged and departed in the Plymouth.

Officer Ingram met Bonner at a pre-arranged place, where they were momentarily joined by Officer Nowe and Mr. Lavick in the phone company truck. Mr. Lavick left, and Nowe joined Bonner and Ingram in the Plymouth. From Bonner, they received the two tinfoil packets of heroin

(one full and one empty except for traces). They drove to another location and conducted a strip search of Bonner, during which they removed the "bugging" device from his body. This search, plus a second search of the Plymouth by Officer Nowe, was fruitless. The three then returned the Plymouth, dropped off Officer Ingram, and Bonner and Nowe proceeded to the residence of Sgt. Carl Morrow of the narcotics division of the Lawton Police Department. There, Nowe sealed the tinfoil packets in an evidence envelope and, along with Morrow and Bonner, signed and dated the seal. The evidence was sent to the Oklahoma State Bureau of Investigation Laboratory in Oklahoma City, where tests showed the contents to be heroin. Bonner, Nowe, Morrow, Lavick, Dr. Worthen, Ingram, and John P. McAuliff (the state chemist at the OSBI laboratory), testified at trial to their roles in the above statement of facts.

Defendant's only witness was himself. He testified that Bonner came into his house and asked for "something for his head." Defendant then went out to his driveway in search of his newspaper, looking underneath the Plymouth parked there. He testified that Bonner lived with him and his wife in the same house, and had never tried to buy heroin from him—either before, during, or after the transaction in question. Neither did defendant see any heroin, nor see anyone "shooting up" on the day in question. He also testified to having an altercation with Officer Nowe sometime in the past, during which Nowe threatened to "send me back to the penitentiary." Defendant admitted to a prior federal conviction for Sale of Marijuana, for which he had received a 12 year sentence.

The parties stipulated that the jury could consider the case in a one-stage, rather than a two-stage proceeding, and the jury returned the sentence set forth above.

■ Defendant's first assignment of error concerns the testimony of State's witness Steven Bonner. Specifically, defendant reviews the contrary story first told by Bonner on the stand (in which he denied having made the buy), the in camera hearing, the question by the District Attorney as to whether Bonner understood he was under oath, and the series of leading questions which followed. Defendant argues that the questions by the District Attorney after the in camera hearing, constituted improper impeachment of one of the State's own witnesses. In this regard, he further argues that the District Attorney was not surprised by Bonner's first version of the transaction, and cites as proof thereof, the following excerpt from the in camera hearing:

"BY THE COURT: The court is going to take a short recess to consider that objection. I would like to see counsel in chambers; let's take a—

(A short recess was then taken, with the jury remaining in the box, and instructed as to their conduct. The following in camera hearing was then had:)

BY THE COURT: Mr. Field [the District Attorney], the court feels like the witness has given some answers which you did not anticipate, is the court correct in that or not?

MR. FIELD: Yes, if the Court please, the State has a sworn statement of this witness, and *recently this witness has made some statements that are contrary to and opposite to the statements that he gave previously under oath.*" [emphasis added] (T. 49)

Defendant claims that the above underlined statement shows that the District Attorney knew "recently," i. e., sometime before trial, that Bonner would deny making the buy, thus it was improper for the trial court to allow him to "impeach" Bonner after the in camera hearing, as his testimony did not surprise the District Attorney. Furthermore, even if Bonner's subsequent testimony (in which he affirmed that he had, in fact, made a heroin buy from defendant) was admissible at all, it would be

solely for the purpose of impeachment, and not as substantive evidence.

We agree with the State that defendant's argument is mistakenly premised upon the assumption that the District Attorney was "impeaching" Bonner. In fact, the District Attorney was merely permitted to ask leading questions when it was apparent that Bonner was a hostile and/or evasive witness. The State correctly cites Cantrell v. State, Okl.Cr., 462 P.2d 342 (1969), wherein we stated:

> "However, even more relevant in the instant case than whether a counsel can impeach his own witness, is whether counsel may be allowed to lead a witness on direct examination. We think the law in this regard is well stated in the case of Morris v. State, 35 Okl.Cr. 5, 247 P. 418 (1926):
>
> 'Where a witness called by a party and examined by him is unfriendly, or appears to evade the questions asked, or to have a lapse of memory, it is in the discretion of the trial court to permit the party to ask leading questions, or to refresh the recollection of his own witness.' "

After reviewing the testimony of Steven Bonner in its entirety, and after considering the alleged errors complained of, we are of the opinion that the trial court was well within its discretion in allowing the District Attorney to admonish Bonner that he was under oath, and to ask leading questions. The above emphasized statement made by the District Attorney during the in camera hearing, we think, indicates only that he felt Bonner was "recently" making inconsistent statements. In the context of the previous dialogue, also quoted above, we feel that the District Attorney used the word "recently" to mean "on direct examination during trial." Given this interpretation, it is obvious that the District Attorney truly was surprised by Bonner's testimony. "Surprise" as related to our position in the instant assignment of error, does not refer to the "surprise"

which would have allowed the District Attorney to *impeach* Bonner; rather, it is more akin to the element of *unfriendliness* mentioned in the *Cantrell* case, citing Morris v. State, supra. Thus, defendant's first assignment of error is without merit.

■ In his second assignment of error, defendant argues that the evidence was insufficient to support the verdict. He reaches this conclusion with an argument closely related to that set forth in his first assignment of error, to-wit: the account of the transaction given by Bonner after the in camera hearing was, for the reasons discussed earlier, inadmissible as substantive evidence; and without it, there was not sufficient evidence to sustain a guilty verdict. For the reasons stated above in our discussion of the first assignment of error, we find that the testimony given after the in camera hearing was properly admitted; therefore, the rest of the instant assignment of error becomes moot, and must be dismissed as being without merit.

■ In his third assignment of error, defendant alleges that the trial court erred in instructing the jury regarding two sections of Oklahoma's Uniform Controlled Substances Act, which provide for enhanced punishment upon second and subsequent conviction of a drug offense. The two statutory provisions are as follows:

63 O.S.1971, § 2–401(B)(1): "A substance classified in Schedules I or II which is a narcotic drug or lysergic acid diethylamide (LSD) is guilty of a felony and shall be sentenced to a term of imprisonment for not less than five (5) years nor more than twenty (20) years and a fine of not more than Twenty Thousand Dollars ($20,000.00). Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation."

63 O.S.1971, § 2–401(C): "Any person convicted of a second or subsequent violation *of this section* is punishable by a term of imprisonment twice that otherwise authorized and by twice the fine

otherwise authorized. Convictions for second or subsequent violations *of this section* shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation." [emphasis added]

The crux of defendant's argument is that prior convictions not obtained under the above cited statutes, such as defendant's prior federal conviction, should not have been used to activate subsection C of § 2–401, supra.

We dismiss defendant's proposition of error with the observation that the trial court's instructions were correct in allowing defendant's prior federal conviction to be used to enhance punishment. Title 63 O.S.1971, § 2–412, which specifically provides that prior federal marijuana convictions can be used to enhance punishment under 63 O.S.1971, § 2–401(C), supra, reads as follows:

"An offense shall be considered a second or subsequent offense under this act, if, prior to his conviction of the offense, the offender has at any time been convicted of an offense or offenses under this act, under any statute of the United States, or of any state relating to narcotic drugs, marihuana, depressant, stimulant, or hallucinogenic drugs, as defined by this act."

█ Defendant's fourth assignment of error concerns typographical errors present in the Judgment and Sentence on Conviction which is part of the record in the instant case. By Order, dated July 22, 1974, this Court directed the District Court, Comanche County, to hold a nunc pro tunc proceeding to correct the errors in the Judgment and Sentence. That proceeding was held before the Honorable J. Winston Raburn, District Judge, on August 8, 1974, and the necessary corrections were made in the official record of Judgment and Sentence. We, therefore, dismiss the instant assignment of error as moot.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

## ORDER DENYING PETITION FOR REHEARING AND DIRECTING THE ISSUANCE OF MANDATE

On September 16, 1974, this Court affirmed Appellant's conviction for the offense of Delivery and Distribution of Heroin, After Former Conviction of a Drug Offense, in violation of 63 O.S.1971, §§ 2–401(B)(1) and 2–401(C), pursuant to which Appellant was sentenced to forty (40) years imprisonment and a $40,000.00 fine. Appellant now petitions for a rehearing.

██ On rehearing, the only argument raised by Appellant which was not adequately disposed of in our original opinion, is his contention that the sentence was excessive. As we have held on many occasions, this Court will not modify a sentence alleged to be excessive unless it is convinced from an examination of the entire record that the verdict and sentence based thereon was manifestly excessive and apparently given under passion and prejudice. See Thigpen v. State, Okl.Cr., 449 P.2d 932 (1969), quoting Epperson v. State, Okl.Cr., 406 P.2d 1017. In the instant case the sentence imposed was within the statutory limit, and no evidence of passion or prejudice appears in the record. Under such circumstances we decline to disturb the jury's sentence, and must accordingly deny Appellant's Petition for Rehearing.

In addition to the Petition for Rehearing, Appellant has filed a Motion to Stay the Issuance of the Mandate until he can file a proceeding in the United States District Court, and until he has exhausted his Federal review. We are of the opinion that the Motion to Stay the Mandate should be, and the same is hereby, denied, and the Clerk of this Court is directed to issue the Mandate forthwith.

It is so ordered.