Joetta Doneesa RAMSEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–464.

Court of Criminal Appeals of Oklahoma.

Jan. 11, 1977.

Larry A. Gullekson, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Joetta Doneesa Ramsey, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–2024, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp. 1974, § 701.2. Her punishment was fixed at a term of twenty-five (25) years to Life imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

The State called as its first witness Richard Costello who testified that he was the assistant manager of a Quik-Trip store located on East Apache in Tulsa County, Oklahoma. He further testified that shortly before noon on September 2, 1975, he heard a shot fired. Soon thereafter a black postman came running into the store. He fell into the arms of Gary Leathers, an employee of the 7-Up Bottling Company, who was standing near the check stand. Leathers lowered him to the floor, checked his pulse and determined that he was dead.

The testimonies of Gary Leathers and Glenn Bolton, both employees of the 7-Up Bottling Company working together on the day in question, reveal, when taken together, the transaction as it occurred at the Quik-Trip store. As the witnesses pulled into the parking lot of the Quik-Trip on East Apache, they observed a green 1959 Ford occupied by a black female parked in the lot. As they began unloading pop Gary Leathers observed the arrival of a black

postman. After the postman left his truck Leathers heard a shot and upon looking around he saw the defendant standing beside the green Ford with a rifle in her hands. Glenn Bolton was in the store at the time of the shooting. Immediately after Bolton heard the shot the postman ran into the store saying, "I'm shot. Help me." (Tr. 44) Bolton testified that before he could get assistance the postman had died. Leathers further testified that he had seen no threatening gestures made by the deceased toward the defendant.

Constance Ramsey and Quanett Ramsey, sisters of the defendant, testified that they were in the shopping center located by the Quik-Trip at the time of the shooting. Both of them testified that the defendant had been beaten by the deceased earlier that same day.

Officer Robert Sellers, who arrived at the scene of the shooting at 1:50 p. m. was subsequently joined by Officer C. V. Hill, Jr., at 2:00 p. m. These officers recovered a loaded .410 shotgun and a spent .410 shell from the green Ford which was driven by the defendant. Officer Hill further testified that the defendant appeared to have been in a fight and was apparently in pain. Officer Hill testified that the defendant, after being advised of her rights, told him "that they had a disagreement; that he had beat her earlier that day, after which she went to her father's residence and retrieved that weapon—the shotgun—and went to the Quik-Trip on Apache, where she saw him there, and shot him." (Tr. 163)

Officer Curtis Hanks testified that he obtained a letter written by the defendant to the deceased. This letter had been found by the mother of the deceased the day of the killing, taped to the mirror in the bathroom of the deceased's home. When Officer Hanks asked the defendant about the note she stated that she had written it sometime in July, "as a momento of a prior altercation with the deceased." (Tr. 168)

Detective Fred Parke also interviewed the defendant. During this interview the defendant acknowledged the waiver of her constitutional rights and stated that she had been living with the deceased, James Stewart, as his common-law wife. She further told Detective Parke that on the day in question the deceased had struck her with a candlestick, kicked her in the stomach and threatened to kill her. The deceased then demanded that the defendant meet him at the Quik-Trip store. The defendant told Officer Parke that she then went to her parent's home, got the gun and returned to the Quik-Trip store where she shot the deceased.

The defendant, testifying in her own behalf, stated that she had lived with the deceased for two years. She further testified that the deceased had, on numerous occasions during this time, violently beaten her. On the day in question the deceased had gone to work at about 10:30 a. m. Later that morning he called the defendant and asked her to bring him his helmet. However, the defendant failed to take the helmet strap along with the helmet and when the deceased arrived home at noon he was very angry with the defendant. They began to argue and finally the deceased started striking the defendant. She threatened to leave him and he responded that he would kill her if she did. At this point the deceased demanded that the defendant meet him at the Quik-Trip store for the purpose of bringing him some money. According to the defendant, the deceased then left with a pistol in his front pocket. The defendant left soon thereafter and went to her mother's home where she got a shotgun. She went to the Quik-Trip store and waited until the deceased arrived. Defendant further testified that when the deceased arrived he got out of his van and walked toward her. The defendant then alleges that the deceased reached for the pocket in which he had placed the pistol and she shot him.

In regard to the letter which the deceased's mother had found taped to the deceased's bathroom mirror, the defendant testified that she had written it in July, after Stewart had threatened to kill her.

The defendant also introduced the testimonies of several friends and relatives who

asserted that the defendant had been subjected to various assaults prior to the homicide by the deceased and that the defendant was a truthful, non-violent person.

In rebuttal the State called Willie Cornelius, the deceased's adopted brother, and Charles Edward Brown, who testified that the deceased was regarded as a peaceful, law-abiding citizen. Cornelius further testified that the defendant had always started the fights between herself and the deceased.

Also, in rebuttal the State called Dan Bietsen who testified that approximately two weeks prior to September 2, 1975, he went to defendant's home to see the deceased. The defendant pulled a pistol from her purse and stated that she did not know where he was but that he was going to be her man and nobody else's.

■ Defendant asserts in her first assignment of error that the unprofessional conduct of the Assistant District Attorney throughout the course of the trial appealed to the passion and prejudice of the jury and resulted in the denial of a fair trial. We have carefully examined each of the alleged instances of misconduct and are of the opinion that the same were not so prejudicial as to influence the verdict against the defendant. In *Samples v. State,* Okl.Cr., 337 P.2d 756 (1959), we stated:

"In view of the evidence, we must apply the principle long adhered to by this court that a conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might, in some degree, have influenced the verdict against the defendant. . . ." (Citations omitted)

We therefore find this assignment of error to be without merit.

■ Defendant contends in her second assignment of error that the trial court erred in declaring Constance Ramsey, defendant's sister, to be a hostile witness, and by allowing the State to examine her as such. In *Cooper v. State,* Okl.Cr., 524 P.2d 793 (1974), this Court stated as follows:

"It is generally held that when a witness proves unresponsive to questions or gives answers substantially contrary to what he is expected to give, or has given in the past, the party calling him has the right to express surprise, and it is then within the discretion of the court to allow cross-examination for the purpose of impeaching the witness. See *Morris v. State,* 35 Okl.Cr. 5, 247 P. 418 (1926). . . ."

It is readily apparent from the record that the witness was unresponsive to the questions propounded by the Assistant District Attorney and gave inconsistent answers. Under such circumstances the trial court did not abuse its discretion in allowing the State to question Constance Ramsey as a hostile witness.

■ Defendant next asserts that she was denied a fair and impartial trial when the court failed to properly admonish or instruct the jury that contradictory statements made by certain witnesses in the trial were to be considered only as they affect the credibility of the witnesses and such statements were not to be considered substantive evidence or original evidence against the adverse party. We need only observe that the record fails to reflect that defendant requested such an instruction. We have repeatedly held that if a defendant feels that additional instructions should be given, it is his duty to reduce instructions to writing and submit them to the trial judge and request that they be given. In absence of such request, a conviction will not be reversed unless this court is of the opinion that failure to give an instruction has deprived defendant of a substantial right. See, *Wolf v. State,* Okl.Cr., 375 P.2d 283 (1962). In the instant case we do not find that failure to give such an instruction deprived defendant of a substantial right. We therefore find this assignment of error to be without merit.

■ Defendant contends in her fourth assignment of error that the trial court erred in not declaring a mistrial as a result of the use of several "evidentiary harpoons" by the State. We have carefully examined each of the alleged "evidentiary harpoons"

and find that in each instance the same were not so prejudicial as to deny the defendant a fair trial or to influence the verdict of the jury. In two instances of the alleged "evidentiary harpoons," the defendant objected and the court sustained the objections, the court admonishing the jury not to consider the voluntary remarks of the witness. The defendant cites *Wright v. State,* Okl.Cr., 325 P.2d 1089 (1958), as authority for the proposition that admonishment will, on certain occasions, be insufficient. In that case a police officer volunteered that the defendant, who had not taken the stand, had served four previous terms in the penitentiary. However, the voluntary remarks in the instant case did not contemplate error of such a prejudicial nature as the remarks in *Wright v. State,* supra. In one instance a witness commented on "how dirty and nasty" the defendant's house was, and on another occasion a witness answered an improperly formed question after an objection had been made.

▉ The final alleged "evidentiary harpoon" involved the rebuttal testimony of Willie Cornelius. This testimony involved the reputation of the defendant, which had been placed in issue by the defendant's witnesses who contended that the defendant was a peaceful, law-abiding citizen. When the witness was asked about the reputation of the defendant, the defendant objected. However, it was entirely proper for the State to rebut the testimony of the defendant's witnesses. *Pitman v. State,* Okl.Cr., 487 P.2d 716 (1971). We therefore find this assignment of error to be without merit.

▉ The defendant contends in her fifth assignment of error that the trial court erred in refusing her requested instruction on self-defense. The self-defense instruction which was given by the trial court was substantially the same as that which was requested by the defendant. However, the defendant included within that instruction a paragraph which would have placed undue emphasis upon the propensity of the victim to be a violent person. The defendant cites *Mulkey v. State,* 5 Okl.Cr. 75, 113

P. 532 (1911), as authority for this requested instruction. However, a reading of *Mulkey* reveals that it does not support the defendant's contention. In *Mulkey,* this Court held that it was error to refuse to admit evidence of the victim's violent character. In the instant case such evidence was freely admitted. However, the admission of this evidence does not in and of itself necessitate a special instruction. We are confident that the jury, having been presented with all of the evidence and testimony, had no difficulty in applying the facts to the instructions. Those instructions properly allowed the jury to consider the acts of the deceased in determining whether or not the defendant was justified in shooting him. We are therefore of the opinion that the instructions, considered as a whole, fairly and correctly stated the applicable law. The defendant's fifth assignment of error is without merit.

▉ Defendant next asserts that the verdict is not sustained by sufficient evidence. We are of the opinion that this assignment of error is wholly without merit. The evidence was uncontroverted that defendant shot Stewart. The question of self-defense was properly submitted to the jury. We have repeatedly held that questions of fact are for the sole determination of the jury and their findings will not be disturbed on appeal where there is evidence reasonably tending to support the verdict. See *Byrne v. State,* Okl.Cr., 482 P.2d 620 (1971).

▉ In defendant's seventh assignment of error it is contended that the trial court erred in allowing the State to introduce into evidence State's Exhibit No. 4, the letter. Defendant argues that this evidence was totally irrelevant, incompetent and immaterial. We disagree. We approve the trial court's finding that the letter was relevant as tending to show defendant's intent. We have previously held that the admission or exclusion of evidence is within the sound discretion of the trial court whose judgment will not be disturbed except for an abuse of discretion. See, *Hicks v. State,* Okl.Cr., 503

P.2d 243 (1972), and *Padillow v. State,* Okl. Cr., 501 P.2d 837 (1972).

 Defendant next contends that the trial court erred by improperly applying the law in sentencing her to a term of twenty-five (25) years to life imprisonment. This contention is well taken. In *Layton v. State,* Okl.Cr., 551 P.2d 270 (1976), we stated:

> "We lastly observe that the sentence of fifty (50) years to life imprisonment does not conform to the statutory provisions of 21 O.S.1973 Supp., § 701.4, which provides as follows:

> " 'Every person convicted of murder in the second degree shall be punished by imprisonment in the State Penitentiary for not less than 10 (10) years nor more than life. The trial court shall set an indeterminate sentence in accordance with this section upon a finding of guilty by the jury of murder in the second degree.'

> "We have recently held that it was the Legislative intent that the only sentence permitted under this section is an indeterminate sentence of ten (10) years to life imprisonment. See, *Smith v. State,* Okl. Cr., 550 P.2d 946 (1976)."

Based on the foregoing authority, the defendant's sentence is modified from a term of twenty-five (25) years to life to a term of ten (10) years to life.

 Defendant's final assignment of error contends that the accumulation of errors and irregularities in the trial when considered as a whole deprived her of a fair trial. Inasmuch as we have found the first nine assignments of error to be without merit, it necessarily follows that this assignment of error is similarly without merit. See, *Glover v. State,* Okl.Cr., 524 P.2d 51 (1974).

The judgment and sentence is, accordingly, MODIFIED to an indeterminate sentence of ten (10) years to Life imprisonment and as so modified is AFFIRMED.

BRETT, P. J., and BLISS, J., concur.