Larry Charles REYNOLDS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–892.

Court of Criminal Appeals of Oklahoma.

Oct. 29, 1979.

Rehearing Denied April 2, 1980.

Robert B. Smith and R. Thomas Beadles, Bloodworth, Smith & Biscone, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Andrew Wilcoxen, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

Larry Charles Reynolds was charged with the crime of Murder in the First Degree in the District Court, Comanche County, Case No. CRF-76-725. He was convicted of Manslaughter in the First Degree and sentenced to twenty (20) years' imprisonment. On appeal, he has challenged the jury instructions and further complains that the State was allowed to impeach its own witnesses.

The following facts are undisputed. The appellant and his estranged wife, Sandra Reynolds, were at a party at Robinson's Landing, Lake Lawtonka, on September 5, 1976. Mrs. Reynolds came to the party with another man, and the appellant was accompanied by another woman, Ms. Lake. During the evening, the appellant engaged in drunken horseplay and fired a pistol into the air. The third time he fired the pistol his wife was struck and killed. Following the shooting, the appellant and Ms. Lake left the party in the car in which Mrs. Reynolds' body had been placed on the back seat. While driving they were stopped for a traffic violation by a Comanche County Deputy Sheriff, who saw the decedent lying in the back seat with blood on her chest.

The State attempted to prove that the homicide was premeditated. The prosecutor introduced evidence of an argument between the appellant and the decedent the night before the shooting. The State's witness Marcia Colyer testified that during the evening in question the appellant stated that if he could not have his wife, then no one could.

Although the appellant admitted holding the gun at the time his wife was shot, he introduced evidence to show that the shooting was accidental. The appellant testified that at the time of the fatal shot he had intended to fire the pistol into the air again, but his hand was grabbed by Dale Brooks

and the gun discharged, striking Mrs. Reynolds. The testimony of Dale Brooks substantially corroborated that of the appellant. However, the State introduced evidence that the appellant's hand was grabbed after the shot was fired, rather than before. Other evidence by the defense indicated a compatible relationship between the appellant and his wife, both before the incident and on the evening of the homicide.

At the conclusion of the evidence, the trial court instructed the jury as to murder in the first degree, manslaughter in the first degree, and justifiable homicide. The refusal of the trial judge to present to the jury the appellant's requested instruction on manslaughter in the second degree, 21 O.S.1971, § 716, is the first alleged error for consideration. The appellant contends the evidence shows the homicide was either intentional or accidental, and that since the jury could have determined that the homicide was an accident involving culpable negligence, they should have been instructed on manslaughter in the second degree.

In *Miller v. State*, Okl.Cr., 523 P.2d 1118 (1974), we stated that if a person is culpably negligent while engaged in the commission of a misdemeanor, the misdemeanor–manslaughter doctrine, set forth in ¶ 1 of 21 O.S.1971, § 711, becomes operative and effectively precludes the possibility of a finding of manslaughter in the second degree. In *Miller*, the misdemeanor committed by the defendant causing the homicide was pointing a gun, 21 O.S.1971, § 1279. In this case, the appellant was engaged in the misdemeanor of reckless conduct under the Oklahoma Firearms Act, 21 O.S.1971, § 1289.11.

■■ When a person is handling a deadly weapon, the law requires that person to use a higher degree of care than if using an instrument ordinarily harmless. See *Jackson v. State*, 84 Okl.Cr. 138, 179 P.2d 924 (1947). The evidence overwhelmingly demonstrates conduct in violation of the statute by "creating a situation of unreasonable risk and probability of death or great bodily harm to another, and demonstrating a con-

scious disregard for the safety of another person." Title 21 O.S.1971, § 1289.11.

■ Such a situation must be determined by considering the totality of the surrounding circumstances. The appellant was recklessly carrying and firing his pistol in proximity to a group of people with whom he had been consuming intoxicating beverages. As admitted by the appellant, this conduct was the proximate cause of the decedent's death. In previous cases construing the statute prohibiting reckless conduct with a firearm, the circumstances considered have included the deliberate pointing of a firearm at unarmed people. See *Withers v. State*, Okl.Cr., 507 P.2d 552 (1973), and *Culpepper v. State*, Okl.Cr., 507 P.2d 561 (1973). However, the pointing of a firearm at a person is not a necessary element of reckless conduct with a firearm.

■■ Because the evidence, even when construed most favorably to the appellant, shows at least an accidental homicide during the commission of a misdemeanor, it was not error for the trial court to refuse to instruct the jury as to manslaughter in the second degree.

■■ Next alleged as error is the trial court's refusal to give the requested instruction on excusable homicide, 21 O.S. 1971, § 731. To support such an instruction there must be evidence tending to show that at the time of the homicide the defendant was doing a lawful act by lawful means with usual and ordinary caution and without any unlawful intention. See *Johnson v. State*, Okl.Cr., 506 P.2d 963 (1973), and *Shirey v. State*, Okl.Cr., 520 P.2d 701 (1974). Under the circumstances in this case, the appellant was engaged in reckless conduct with a firearm. Even though the appellant did present evidence indicating the possibility of an accidental death, the evidence also showed that the appellant was engaged in an unlawful act when the homicide occurred. Thus, it was unnecessary for the trial judge to instruct the jury on excusable homicide, and failure to do so was not error.

■■ Last, the appellant claims the trial court erred by allowing the prosecutor to impeach his own witnesses and by failing to give a limiting instruction concerning the use of such evidence. The rule of law controlling a party's impeachment of its own witness is well settled in Oklahoma. In *Sturgis v. State*, 2 Okl.Cr. 362, 102 P. 57 (1909), we held that surprise is a valid justification for impeachment of one's own witness. There is, however, a limitation. The party presenting the witness must not only be surprised at the testimony, but also injured by it. See *Sturgis v. State*, supra, and *Mackey v. State*, Okl.Cr., 526 P.2d 1161 (1974). Under these conditions, a party may offer in evidence previous statements of such witnesses which contradict the injurious portions of their testimony.

Here, the appellant complains of two instances in which the prosecution introduced pretrial statements in an effort to elicit desired answers from its own witnesses. In a pretrial statement the witness Jeff Allen Hunt had stated that the party at which Mrs. Reynolds was killed had been sponsored by the "Gooses," a group in which the appellant was one of only two members; but at trial he testified that the party was sponsored by a motorcycle shop. In attempting to elicit the answer given in the pretrial statement, the prosecutor was allowed, over objection, to use the witness' previous statement and in effect to impeach his own witness on direct examination.

■ It appears from the record that the prosecutor did not have any reason to suspect that the witness would vary his testimony at trial from his previous statement, and that the prosecutor was truly surprised, thus meeting the first condition set forth in *Sturgis v. State*, supra. However, the record does not show sufficient injury to justify the impeachment. Apart from the fact that the witness' testimony was not detrimental to the appellant, it also was not injurious to the State. It did not contradict any of the prosecution's other evidence. Nor did it support the prosecutor's theory of premeditation. Thus, it was improper for the State to impeach its own witness,

and it was error for the trial court to allow this over the appellant's objection.

■ *Sturgis* also requires an instruction to the jury when impeachment is allowed, limiting the use of the contradictory testimony to the issue of credibility. But no such instruction was given in this case. We observe that the record fails to reflect that the appellant requested such an instruction. If the appellant wishes to request additional instructions, it is his duty to make this request and submit the instructions in writing to the trial judge. Failure to do so will not be reversible error unless we find failure to give an instruction has deprived a defendant of a substantial right. See *Ramsey v. State*, Okl.Cr., 558 P.2d 1179 (1977).

■ We now turn to a consideration of whether these errors deprived the appellant of a substantial right. Because the trial court did not give an instruction limiting the use of this contradictory testimony to determine the credibility of the witness, it may have been considered as substantive evidence by the jury. The evidence appears to have been introduced to help prove premeditation in support of the charge of Murder in the First Degree; but the jury returned a verdict of manslaughter in the first degree. Because a verdict was not returned for the greater offense, even with the improperly admitted evidence, and because the evidence of guilt was overwhelming even without this witness' testimony, we find that these errors were harmless.

■ A second instance cited as error concerns the introduction of a pretrial statement after the witness, Ms. Lake, responded to a question from the prosecutor that she did not remember. The prosecutor contended that he was refreshing his witness' memory when he showed her the pretrial statement and then read aloud the question and answer from that statement given previously. He did not at any time introduce statements which contradicted portions of his witness' testimony. Clearly, this use of a prior statement was not impeachment by the prosecutor of his own witness.

The situation in this case is similar to the one in *Morris v. State*, 35 Okl.Cr. 5, 247 P. 418 (1926). There, we stated in the second paragraph of the Syllabus:

"Where a witness called by a party and examined by him is unfriendly, or appears to evade the questions asked, or to have a lapse of memory, it is in the discretion of the trial court to permit the party to ask leading questions, or to refresh the recollection of his own witness."

This excerpt has often been cited with approval in later case, however, a review of *Morris* and later cases citing it leads us to conclude that the rule therein is limited to the situation where a witness called by a party is a hostile witness. In this case, the witness was not declared hostile, nor does it appear from the record that she was hostile. In fact, the prosecutor stated he was refreshing the witness' memory and that the witness was not hostile.

In regard to refreshing a witness' memory, this Court said in *Rasbury v. State*, Okl.Cr., 303 P.2d 465 (1956), that when a witness' memory is vague it may be refreshed by submitting a memorandum to him which the witness had made at the time the facts therein were fresh in his mind. If the use of the memorandum is objected to, then a necessary showing should be made that the memorandum was made or examined and verified by the witness while the facts stated therein were fresh in her recollection, and that the facts stated in the memorandum were true.

In the case before us, the prosecutor not only allowed the witness to inspect her prior statement, but read the specific question and answer he was interested in to the court. When refreshing recollection, relevant evidence is the testimony of the witness and not the writing. The statement should be shown to the witness only to revive her memory. However, it was within the discretion of the trial judge to allow the prosecutor to read part of the statement, and there is no indication that this discretion was abused.

Here, the witness had already given testimony responsive to the question which she answered, "I don't remember," and once the prosecutor had refreshed her memory she testified consistently with both her previous testimony and the statement given before the trial. This line of questioning was simply an unnecessary refreshing of the witness' memory, being repetitive and not in the nature of impeachment.

None of the propositions argued by the appellant warrant a reversal or modification of the judgment and sentence for error or prejudice. After a review of the record, this Court is of the opinion that the appellant had a fair and impartial trial, and the judgment and sentence is, therefore, *AFFIRMED*.

BRETT and BUSSEY, JJ., concur.