## RAINBOLT v. STATE.

No. A-11801. July 29, 1953.

(260 P. 2d 426.)

Herbert K. Hyde, Lee Williams, and Carroll Samara, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty, Gen., for defendant in error.

JONES, J. The defendant John Kenneth Rainbolt was charged by an information filed in the district court of Oklahoma county with the illegal possession of marihuana. A jury was waived, the defendant was tried, found guilty, and sentenced to serve five years in the State Penitentiary, and has appealed.

The sole question presented by the appeal is the contention of defendant that the evidence upon which he was convicted was procured by an illegal arrest and an unlawful search of his person.

The proof of the state showed that three officers were standing in front of Beverly's Cafe in the 200 block on West Grand Avenue in Oklahoma City, about 1:00 o'clock in the morning, when they saw the defendant approaching them from the west carrying a bag. The officers testified that as the defendant passed them he looked at them closely and looked back over his shoulder after he had gone five or ten feet past the officers; that he was a stranger to them and that his actions excited their suspicions. They thought "He acted peculiar." They asked him to stop, and he was searched by the officers. A one-ounce bottle of marihuana was found on his person and in the traveling bag the officers found a pint jar of marihuana. The officers asked the defendant where he was going, his name, and where he was from, to which the defendant replied that his name was Rainbolt, that he was from Cordell, Oklahoma, and had just arrived in town. On cross-examination, Officer Skaggs testified:

"By Mr. Hyde: Q. He was coming down the street walking on the sidewalk, was he not? A. Yes, sir. Q. With a bag in his hand? A. Yes. Q. And after he had gotten past you boys about six or eight feet, then you hollered for him to stop? A. Yes. Q. Was there anything out of the natural and ordinary manner in which he walked? Did he walk straight? A. Yes. Q. He was not drunk, was he? A. No. Q. And when he got even with you, did you see him manifest any hostility towards anybody on the street or towards the officers? A. No. Q. He looked like any ordinary boy walking down the street, didn't he? A. Well, yes, he looked like anybody else."

The defendant was arrested and taken to the police station where a statement in writing was taken from him and signed by him. In this statement, he said that he was working for the Stanolind Oil Company and had just arrived from Cordell; that he was going to stay in the city that night for the reason that the bus to his father's home did not run after 11:30 p.m.; that he had been honorably discharged from the Navy and had commenced smoking marihuana while he was in the Navy, that he smoked marihuana every day, that he had obtained the marihuana at Chickasha, and while he was working at Cordell he kept it buried

on the outskirts of Cordell; that he had brought it to the city for the purpose of smoking it himself.

M. W. Rainbolt testified that he lived in West Nichols Hills and was the father of the defendant; that he had a telephone conversation with his son the night he was arrested, and that since it was too late for the defendant to get home on the bus that the son intended to stay in town that night.

A motion to suppress the evidence was presented by the defendant and the evidence on the motion to suppress was substantially as above related. Repeated objections were also made to the admission of the evidence obtained by the search of the person and effects of the accused on the ground that such search was illegal, so that the question of the validity of the arrest and subsequent search and seizure is properly before us for determination.

The state attempts to justify the arrest on the ground that the defendant was violating an ordinance of Oklahoma City prohibiting loitering, which said ordinance provides:

"It shall be unlawful and an offense, between the hours of 12:00 o'clock midnight and the daylight hour thereafter, for any person to loiter or wander aimlessly upon or about the streets, alleys, or other public highways, or parks of said city, or upon private lots, around vacant or occupied buildings or railway property, or yards, who has not a lawful reason for being at such place at such time, or to sleep in or about any such place, or within any place, or upon any bench or chair provided for public accommodation, without lawful authority or permission so to do."

The determination of this case hinges upon the question as to whether there was a lawful arrest of the accused. If the arrest was lawful, then the subsequent search was legal and the evidence obtained by the search admissible in the trial of the accused. If the arrest was not lawful, the search was illegal and the seizure of the contraband was unlawful. By statute, it is provided:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested." 22 O.S. 1951 § 196.

We are here concerned solely with the first subdivision of the above statute as it is contended that the accused committed the misdemeanor of loitering in the presence of the officers so as to justify his arrest. However, the officers testified that the actions of the accused were peculiar and aroused their suspicions, that these actions which were peculiar consisted of the defendant looking at them intently as he passed and looking back over his shoulder after he had gone five or ten feet past them. We do not believe that these actions of the accused constituted the commission of the crime in the presence of an officer so as to justify his arrest without a warrant.

To determine whether the accused was guilty of loitering under the ordinance hereinabove quoted, it is necessary to consider what is meant by the term "loiter". Black's Law Dictionary, Third Edition, defines "loiter" as meaning, "To stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind."

The evidence of the officers does not show that the defendant was guilty of loitering. Under the testimony of the officers the defendant was not arrested for loitering, he was stopped by the officers because they became suspicious of of the way he was acting. The officers asked the defendant his name, where he was from, and what he was doing on the street at that hour; to all of which questions the defendant gave truthful answers. He was not wandering aimlessly about or idling, but was walking as any ordinary citizen who might have just arrived on a bus and had started to a hotel. It is quite certain from the testimony of the officers that if the search of the accused had failed to disclose anything illegal in its nature in his possession that the defendant would not have been held in custody and no charge of loitering would have been filed. To justify this arrest it must be done by reason of what the officers discovered after they took the defendant into custody, rather than anything that was known to them at the time he was taken into custody. This cannot be done. Saltsman v. State, 95 Oka. Cr. 228, 243 P. 2d 737. An officer has no right to arrest and search a person on mere suspicion of the commission of a misdemeanor. Lawson v. State, 84 Okla. Cr. 396, 182 P. 2d 786.

The constitutional guarantee of protection against unreasonable searches and seizures, Art. 2, § 30, Oklahoma Constitution, extends to innocent and guilty alike. As much as it might be regretted that a person transporting marihuana is being permitted to escape conviction by reason of our enforcement of the constitutional provision, it is far better that we adhere strictly to the Constitution than to so interpret it that thousands of innocent persons might be subjected to the harassment of being stopped by officers of the state and their personal belongings subjected to a search because such officers suspected the commission of a misdemeanor. If the officers do not have a warrant, the misdemeanor must actually be committed in their presence. In this case there was no crime committed in the presence of the officers. An offense is not committed in the presence of an officer unless the officer becomes aware of the commission of such offense through the use of one of his senses, the sense of sight, hearing, smell, etc. Reininger v. State, 59 Okla. Cr. 406, 60 P. 2d 629. The motion to suppress evidence interposed by the defendant should have been sustained. The judgment and sentence of the district court of Oklahoma County is reversed, and the defendant is discharged.

POWELL, P. J., and BRETT, J., concur.