Jack C. HENRY, Jr., and James Henry
Hampton, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–15596.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1972.

See also, 496 P.2d 124.

Red Ivy, Chickasha, Clifford W. Brown, Lubbock, Tex., for plaintiffs in error.

Larry Derryberry, Atty. Gen., H. L. McConnell, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

Plaintiffs in Error, Jack C. Henry and James Henry Hampton, hereinafter referred to as defendants, were convicted by jury verdict in the District Court of Stephens County, Case No. CRF–69–112, of burglary of a coin operated device and sentenced to seven (7) years imprisonment. Judgment and sentence was imposed on September 29, 1969, and this appeal perfected therefrom. Defendants assert the search and seizure was illegal.

Specifically, defendants were charged with breaking into and stealing money from a pay telephone located in front of Rollins Drive-In in the City of Marlow, Stephens County, on July 17, 1969. The

evidence established that about 1:15 a. m. on July 17, 1969, Duncan Police Officers Foster and Langford in a patrol car observed a car parked beside a pay telephone booth in Duncan. One man was inside the booth and another outside. The two men, identified as the defendants, drove away in their car and, while observed by the officers, pulled up to four different pay telephone booths. As the defendants drove away from the booth in front of the Dobbs Trailer Courts, Officer Foster approached the booth to examine the phone, discovering only that there was a small empty hole where the lock was normally located. Officer Foster then radioed ahead for assistance to the town of Comanche, ten miles south of Duncan, in which direction the defendants' car was traveling.

Officer Foster next observed the defendants exit their vehicle and enter a self-service laundromat in Comanche. Some' fifteen or twenty minutes later a police car from Comanche, Oklahoma, arrived with one officer, and another car driven by Mr. James Turner, an investigating officer in the District Attorney's office arrived. The two armed Duncan policemen and Mr. Turner, who was also armed, entered the laundromat and began interrogating the defendants, who were drying some clothing. The defendants gave proper identification of themselves, and informed the officers that they were en route to Denton, Texas, to obtain a job driving a truck; and they explained that their frequent use of the pay telephones resulted from their trying to call their wives in St. Louis, Missouri, which they said could be verified by the telephone operator. Officer Foster later verified that a telephone call was completed from a pay telephone, but could not ascertain from the operator to where the call was made. According to the testimony of the officers, the two men voluntarily agreed to return to the Dobbs Trailer Court telephone booth in Duncan; but, defendant Hampton testified, at the hearing on the motion to suppress, that they were advised by Mr. Turner that they were "technically under arrest."[1] Nonetheless the defendants drove their own car some ten miles back to Duncan, following the police car and being followed by the car driven by the District Attorney's investigator. At this point, the question concerning whether or not the men were under arrest becomes important.

At the Dobbs Trailer Court the officers and defendants exited their vehicles and examined the telephone booth. After some discussion concerning the telephone, defendant Hampton opened the trunk of his car in order to show Mr. Turner the wet swimming trunks in an effort to prove to him that they had been swimming earlier that day, as they claimed. At the laundromat the defendants were drying several towels and a shirt. Mr. Turner described the suitcases in the car trunk and stated that the swimming trunks "felt kind of wet." He was asked by the prosecutor:

"Q. Well, what did you do after that? Did you go back over to the telephone? Did you examine the telephone further or what did you do?

"A. Well, at that time I asked him if he minded if I searched the car and he said, well—he said first, okay, but he said are we under arrest and I said yes, technically, when we restrict your movements you are under arrest and he said, *in that case won't let you search the car until he could get an attorney.*" [sic] (Emphasis added.)[2]

Later in his testimony, Investigator Turner related that Mr. Hampton left the door open on the driver's side of his car, when he got out of it, and the car dome light was left on.[3] Turner related that some of the officers were examining the car identification number on the door post, so he walked over to the car. He looked

I. The fact of technical arrest was admitted by Mr. Turner on cross-examination.

2. Tr.Evid. 230.

3. At the hearing on the motion to suppress, defendant Hampton testified that he did not leave the car door open, and that it was opened by the police officers.

into the back seat of the car and saw some clothing and maps, and he stated that he thought he saw a quarter, or nickel, and maybe a dime on the floor of the passenger's side of the car. He walked around the car, reached in the car window and discovered a handful of nickels, dimes and quarters. He put them back and told the officers to go ahead and take the two defendants to jail and book them.

Defendant Hampton was permitted to lock his car before he was taken to jail. Mr. Turner had the car towed to the Ford Motor Garage, where it was impounded. Subsequently, Investigator Turner directed Officer Langford to bring Hampton's car key from Hampton's personal effects retained at the police station; and at 4:45 a. m., without a search warrant, Mr. Turner commenced to thoroughly search the defendant's automobile. In the search several items were seized, including certain tools, a number of keys, automobile license plates, and a large sum of dimes, nickels and quarters.

■ Defendants' motion to suppress these items on the grounds of an illegal search and seizure was overruled, and the items were admitted into evidence, but each time over objection. Defendants contend that this was error. I believe the motion to suppress should have been sustained.

■ When the officers confronted the defendants in the laundromat they effectively restrained the defendants' freedom to walk away, and they took them into custody. The officer commented that they were under "technical arrest." Regardless of the exact words used by the officers, the defendants were under arrest at that point since "arrest is the taking of a person into custody." 22 O.S.1971, § 186. "No particular form of words is necessary to constitute an arrest." Heinzman v. State, 45 Okl.Cr. 305, 308, 283 P. 264, 265

(1929). It is apparent that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed. 2d 889 (1968).

■ Defendants' argue that the officers did not have probable cause to believe they had committed a felony necessary to justify an arrest without a warrant. There appears to be some merit to this argument since, aside from defendants suspicious actions, and a missing lock from one pay telephone which was not found among defendants' possessions, the officers were unaware that any of the telephones had been burglarized until after the seizure of incriminating evidence from the car, as the result of subsequent investigation. Officer Foster used field glasses during his period of surveillance and he testified he "couldn't tell for sure what he [defendant] was doing" and saw no offense committed in his presence. It is well established that an arrest cannot be justified by reason of discoveries made after accused is taken into custody, rather than information known to arresting officers at time of arrest. Rainbolt v. State, 97 Okl. Cr. 164, 260 P.2d 426 (1953); and Jones v. State, 88 Okl.Cr. 243, 202 P.2d 228 (1949).

However, assuming the arrest was legal, it is apparent the search of defendant's car—without a search warrant—and the seizure therefrom was illegal, absent a distortion of the fundamental principles of criminal law. The fact that these two defendants turned out to be ex-convicts does not warrant the distortion of the law of search and seizure. The defendants were arrested inside the laundromat some twenty minutes after they parked their vehicle outside. The officers directed defendants to drive their car back some ten miles to the telephone at Dobbs Trailer Court, after they were arrested. Defendants' car stood empty at the telephone booth, while the officers examined the

telephone and questioned the defendants further. Notwithstanding the fact that the defendant refused permission to search his car, the unoccupied car was searched by Mr. Turner, who discovered the coins under the car seat. The unoccupied car was subsequently towed away to a garage where, after considerable time lapse, it was completely searched and the items seized, without a search warrant. It is difficult to perceive what the officer's hurry was in conducting the search, when he could have waited a short time and obtained a proper search warrant to accomplish his task legally. A search conducted at a different place and time than the arrest is not incident to the arrest, except where unusual exigent circumstances exist. See: Gaston v. State, Okl.Cr., 457 P.2d 807 (1969).

Even if the officers had searched the car at the time of defendants' arrest at the laundromat, it probably would not have been reasonable as incident to the arrest since the area searched was clearly outside the reach and control of the defendants; and because the vehicle was subject to being impounded at that time; and because there were sufficient officers present to have controlled the situation; and hence, there were no unusual exigent circumstances existing at that moment.

The facts of this case, at that point, are very similar to those found in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971), in which the United States Supreme Court held that the search without a warrant of Coolidge's Pontiac automobile, after he was arrested inside his home while his Pontiac vehicle was parked outside under the carport, was neither incident to a valid arrest, nor was the search without a warrant justified on the theory that the vehicle was an instrumentality of the crime. In the instant case, when the defendants were first placed under arrest, technical

or otherwise, they were inside the laundromat and the vehicle was parked on the street in a situation similar to that found in Coolidge v. New Hampshire, supra. In *Coolidge,* the Supreme Court said:

"The leading case in the area before *Chimel*[4] was United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653, which was taken to stand 'for the proposition, *inter alia,* that a warrantless search "incident to a lawful arrest" may generally extend to the area that is considered to be in the "possession" or under the "control" of the person arrested.' *Chimel, supra,* 395 U.S. at 760, 89 S.Ct. at 2038. In this case, Coolidge was arrested inside his house; his car was outside in the driveway. The car was not touched until Coolidge had been removed from the scene. It was then seized and taken to the station, but it was not actually searched until the next day."

It is true that later when the defendants were returned to their car, it became an area within their reach. But this was not when the car was searched, and we reject the idea that officers may parade arrestees into different areas for the purpose of searching those areas without a warrant. It is significant that the defendants were returned to their car *under the direction of the police.* In fact, the searches occurred when the car stood empty at the Dobbs Trailer Court and later at the garage when the defendants were in jail.

The facts in the instant case are also similar to those in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964), where after the defendant was arrested his car was towed to a garage and completely searched. The unanimous opinion of the Supreme Court held in relevant part:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things

4. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. *Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.* . . . The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime. . . . " 376 U.S. at 367–368, 84 S. Ct. at 883 (Emphasis added)

Furthermore, there is no merit, in this jurisdiction, to the notion that a car may be searched without a warrant simply because it is a movable object. Brinegar v. State, 97 Okl.Cr. 271, 262 P.2d 464 (1953). Even if such a rule were employed in this jurisdiction, it would not apply in this case where the car was no longer mobile, but in the custody of the police.

If the officers believed they had probable cause to search defendants' car, they should have presented the detailed facts indicating probable cause to a magistrate who could have issued a search warrant, but such was not done and an unconstitutional search and seizure resulted.

Since the search was unlawful, the fruits thereof were inadmissible. Accordingly, the judgment and sentence is reversed and remanded.

BUSSEY, P. J., and SIMMS, J., concur.