**STATE of Oklahoma, ex rel., Craig D. CORGAN, District Attorney, Eleventh District of Oklahoma, Appellant,**

v.

**Paul Wesley KING, Appellee.**

No. S–92–1210.

Court of Criminal Appeals of Oklahoma.

Feb. 8, 1994.

---

Stephen Coit, Asst. Dist. Atty. (at trial), Stephen Coit, Asst. Dist. Atty. (on appeal), Bartlesville, for appellant.

Jim Fransein, Stuart Southerland, Tulsa, for appellee.

## *OPINION*

CHAPEL, Judge.

On November 5, 1991, Appellee, Paul Wesley King, was charged with Unlawful Possession of a Controlled Dangerous Substance—Cocaine, in violation of 63 O.S.1991, § 2–402(B)(1), Case No. CRF–91–379, in the District Court of Washington County. The day of the preliminary hearing, the State filed an amended information charging King with the additional offense of Maintaining a Dwelling House to Keep Controlled Drugs, in violation of 63 O.S.1991 § 2–404(A)(6). King also had former convictions of two or more felonies. Defense counsel objected, and it was decided that the preliminary hearing on the new Maintenance charge would not be held in February 1992 to give defense counsel time to prepare. The preliminary hearing on the original Unlawful Possession charge was held on December 17, 1991 and concluded on January 15, 1992, resulting in King being bound over.

King filed a Motion to Suppress the evidence obtained as a result of the search of his home. A hearing on the motion was held on June 22, 1992. At the conclusion of the hearing, the district court sustained the motion to suppress, finding that: (1) there was not reasonable cause for the warrantless search; (2) the information used by the parole officer to secure the authorization was stale; and (3) there did not exist an immediate threat as required by the Department of Corrections guidelines. It is from this ruling that the State has brought this appeal.

Pursuant to Rule 11.2(a)(5), *Rules of the Oklahoma Court of Criminal Appeals,* 22 O.S.1991, Ch. 18, App., this appeal was automatically assigned to the Accelerated Docket of this Court. The proposition was presented to this Court in oral argument on June 3, 1993, pursuant to Rule 11.5(b) of the Rules of this Court. At the conclusion of the hearing, the Court decided to take the matter under advisement and render a published opinion since the issue raised in this appeal is of first impression in Oklahoma.

The Bartlesville police had been investigating King for some time and suspected him of dealing in drugs. However, the police were never able to secure a search warrant for King's home. Mike Buchanan had been King's parole officer since King's parole in February 1990.[1] On September 24, 1991, Buchanan submitted a violation report to his supervisor, Stormy Wilson. The report asserted that King's parole should be revoked mainly because he plead guilty to offenses in

---

1. King had been imprisoned for Unlawful Posses- sion of Marijuana.

Delaware County.[2] Buchanan also requested permission to search King's residence for contraband, basing the request on information the police had gathered during their investigation of King. A few days later, Wilson issued the arrest warrant and authorized the search.

The arrest warrant was not executed until October 14, 1991 by Buchanan and several uniformed police officers from Bartlesville. King was arrested in his home and refused consent to a search of his residence. Nonetheless, Buchanan and the police officers proceeded to search the house with the aid of a drug dog.

Living with King at that time was his son, Caleb King, his seventeen year old nephew, Justin Lucas King, and his girlfriend, Mary Jane Simone. Justin slept in a room that was also King's business office. In that room the drug dog alerted onto an unlocked filing cabinet. The cabinet contained bill receipts with King's name and address and a closed brown paper sack. A small amount of cocaine was found in the sack. The dog also alerted onto a billfold in the living room which contained credit cards, several checks made out to Paul King Guttering and Paul King individually, $322 in cash, and telephone numbers. King was charged with Unlawful Possession of Cocaine based upon the cocaine found in the paper sack.

The state raises only one issue on appeal: that the trial court erred in sustaining Appellee's motion to suppress. The state contends that the evidence was obtained by a reasonable search under the circumstances. In order to ascertain the appropriateness of the district court's ruling in suppressing the evidence, we must determine: (1) whether the rules promulgated by the Department of Corrections and the Pardon and Parole Board concerning parolees are reasonable; (2) whether the search of King's home was reasonable under the circumstances; and (3) if the search was unreasonable, whether the evidence obtained should be excluded.

■ Although parolees are not entitled to the full panoply of constitutional rights, they are entitled to certain basic rights. *Morris-*

*sey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (revocation hearing); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (right to counsel in certain cases); *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (limited Fourth Amendment protection to be free from unreasonable searches and seizures).

■ Typically, certain rules and conditions govern the activity of parolees. If they violate any of those rules and conditions, their parole can be revoked and they can be forced to serve the rest of the sentence in prison. In Oklahoma, the Pardon and Parole Board (Board) and the Department of Corrections (Department) are required by statute to promulgate rules and regulations for the supervision of all parolees. *See* 57 O.S.1991, §§ 355, 507.

The Board has created conditions of parole that apply to all inmates recommended for parole, unless specifically waived by the Board. One of the many standard conditions is that the parolee "[a]gree[s] that at any time or place, he is subject to search. In addition, his vehicle and any property under his control is subject to search." *Pardon and Parole Board Policy Manual,* No. 005, II(A)(11) (8/8/91). The Department has likewise created guidelines for the arrest and search and seizure of parole violators. These guidelines promulgate a "reasonable grounds" standard for parolee searches which consider "a variety of factors, including: information provided by non law enforcement personnel, the reliability of the information, the officer's experience with the parolee, and the need to verify compliance with the rules of supervision and the law." *Probation and Parole Manual,* Chapter 3 II(B) (11/01/90). In accordance with the Manual, a parole officer may conduct four types of searches: (1) when a rule or condition in the sentencing documents authorizes a search; (2) when the offender gives written consent to the search; (3) when the court issues a search warrant; and (4) when the five requirements for a warrantless search are met.

2. King had plead guilty to Driving Under the Influence and possession charges in April, 1991.

A parole officer may only conduct a warrantless search if five requirements are met *and* the officer's district supervisor approves of the search. The five requirements are: (1) there are reasonable grounds to believe that the offender is keeping contraband on the property; (2) failure to search may result in an immediate threat to the public, employees, or offenders; (3) the supervising officer's experience with the offender has documented a need for close supervision; (4) the search is not the result of a request for assistance from other law enforcement officers who have been unable to obtain a search warrant; and (5) officers are not authorized to break and enter into an offender's residence or business to conduct a warrantless search. The guidelines also state that the search "shall not invade the privacy of a third party" without that person's consent.

In addition to these requirements, the United States Supreme Court has mandated that searches of probationers' and parolees' houses be reasonable: "a probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'"[3] *Griffin* dealt with a Wisconsin regulation similar to Oklahoma's that allowed probation officers to search a probationer's home without a warrant if reasonable grounds existed for the search. In *Griffin*, the defendant's residence was searched while he was on probation by probation officers acting on information from the police that there may have been an illegal weapon in his home. The warrantless search produced a gun and Griffin was subsequently convicted of a weapons offense. The Supreme Court found the search was based on "reasonable grounds," following Wisconsin Supreme Court precedent that a warrantless search was reasonable when based on information from a police officer. The search was thus upheld under the law and circumstances of that case.

Oklahoma has yet to define what circumstances constitute a "reasonable" warrantless search of a parolee or a probationer. However, warrantless searches incident to an arrest by police officers are analogous. A police officer may arrest a person without a warrant under certain circumstances. 22 O.S.1991, § 196. That person and his or her immediate surroundings may be searched incident to the arrest. This Court has found searches incident to a warrantless arrest invalid when the person is arrested on mere suspicion of unlawful conduct. *Graham v. State*, 447 P.2d 200 (Okl.Cr.1968); *Walker v. State*, 270 P.2d 1107 (Okl.Cr.1954); *Rainbolt v. State*, 97 Okla.Crim. 164, 260 P.2d 426 (1953). Similarly, the Department's guidelines require more than mere suspicion to justify a warrantless search of a parolee's home. Because we read the guidelines to contain a reasonableness standard, we accordingly hold that the rules and conditions of parole as promulgated by the Board, and the guidelines as promulgated by the Department, to be reasonable and valid when properly applied and utilized.

■ The next issue to determine is whether the search of King's home was reasonable according to the guidelines. Because Oklahoma has never addressed this issue, this Court looks to other jurisdictions for guidance. The majority of states that have addressed this issue agree that probable cause is not necessary to justify a warrantless search of a parolee's home. However, they do afford Fourth Amendment protection for parolees by requiring reasonable grounds to exist in order for a warrantless search to be valid. *See Commonwealth v. Brown*, 240 Pa.Super. 190, 361 A.2d 846 (1976); *Allan v. State*, 103 Nev. 512, 746 P.2d 138 (1987); *State v. Lucas*, 56 Wash.App. 236, 783 P.2d 121 (1989); *State v. Flakes*, 140 Wis.2d 411, 410 N.W.2d 614, 620 (App.1987).

We agree that the Fourth Amendment contains a reasonableness standard for parolee searches, but we decline to go so far as a small minority of jurisdictions have done and afford parolees substantially more protection. *See Braxton v. State*, 524 So.2d 1141 (Fla. App.1988) (fruits of a warrantless search of parolee's home, even if search was reasonable, are not admissible to prove a new crimi-

---

**3.** *Griffin*, supra, 483 U.S. at 873, 107 S.Ct. at 3186, 97 L.Ed.2d at 717. While *Griffin* specifically dealt with a probationer, the Court indicated that parole and probation are similar in regards to constitutional protections. 483 U.S. at 874, 107 S.Ct. at 3169, 97 L.Ed.2d at 718.

nal offense—such evidence is only admissible in parole revocation proceedings); *State v. Cullison,* 173 N.W.2d 533 (Iowa 1970) (a parolee has the same Fourth Amendment rights as any other citizen and the warrantless search of his or her home absent probable cause is unreasonable).

■ In this case, Buchanan testified that his reasons for searching King's home without a warrant were that there was a great deal of traffic at King's home, that King had recently purchased an automobile for $6,000 in cash, and that someone told the police they had seen King with a rock of cocaine the "size of a grapefruit" sometime before July 1991.[4] The local police had provided all of this information to Buchanan. Buchanan's violation report requesting an arrest warrant for King was submitted to his supervisor, Wilson, on September 24, 1991. Wilson testified at the preliminary hearing that he authorized the search a few days later, yet the arrest warrant was not executed until October 14, 1991.

In applying the facts of this case to the five Department guidelines, we find that this warrantless search was unreasonable. Specifically, guideline number four prohibits searches which are the result of an assistance request from other law enforcement officers who have been unable to obtain a search warrant. We are concerned that the search was conducted to aid the local police who were unable to secure a search warrant as a result of their own investigation. The search was not conducted for a parole purpose, as Buchanan did not need to search for additional evidence to justify revocation of King's parole. King's convictions in Delaware County were sufficient to cause revocation. Accordingly, we find that Buchanan had for all practical purposes "switched hats" and acted as a police officer rather than a parole officer. We so find notwithstanding the district court's opinion that there was no subterfuge.

While parole officers are peace officers as defined in 57 O.S.1991, § 515, that does not permit parole officers to use such authority to assist the police in evading Fourth Amendment warrant requirements. We join the many jurisdictions which find this renders a warrantless search of a parolee's home unreasonable. *Commonwealth v. Brown,* 361 A.2d 846, 850 (Pa.1976) (once a parole officer "switches hats" and in all relevant respects acts as a police officer, the administrative justification which permits searches without a warrant is no longer applicable); *State v. Johnson,* 748 P.2d 1069, 1072 (Utah 1987) (police officers may not use parole officers simply as a means of avoiding the warrant requirements to conduct random searches); *State v. Flakes,* supra, 410 N.W.2d at 720 (parole agent cannot be a stalking horse or agent for the police); *U.S. v. Butcher,* 926 F.2d 811, 815 (9th Cir.1991) (under no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system a subterfuge for criminal investigations).

Furthermore, guideline number two also was not satisfied because failure to search King's home would not have resulted in an immediate threat to the public, employees, or offenders. This is indicated by the fact that the search was not conducted until almost a month after it was requested and authorized, and more notably, not until after King was arrested. An "immediate" threat would have required swifter action.

We are further concerned that the Board's standard warrantless search condition did not specifically apply to King. It was not listed as a condition of his parole on his parole certificate dated February 7, 1990. The policy of the Board states that the rules and conditions of parole apply to all inmates recommended for parole unless waived by the Board. The rules and conditions as currently stated were adopted by the Board in August 1991. It appears to this Court that this warrantless search condition was waived by the Board in King's case. It does not necessarily mean, however, that a warrantless search could not have been properly conducted had the Department guidelines been followed.

■ The final issue to determine is whether the district court properly suppressed the

---

4. The main reason for issuance of the arrest warrant was his convictions in Delaware County.

748

fruits from the warrantless search of King's home. While we have previously held that the exclusionary rule does not apply in parole revocation hearings, *Richardson v. State*, 841 P.2d 603 (Okl.Cr.1992), the State sought to admit the evidence procured from this parolee search in a subsequent criminal prosecution on new charges. Because the exclusionary rule does apply to criminal trials, the evidence was properly suppressed. Therefore, we **AFFIRM** the district court's ruling that the search of King's home was unreasonable and that the evidence was inadmissible.

LUMPKIN, P.J., and JOHNSON, V.P.J., concur.