1998 OK CR 51

Kevin Andrew OTT, Appellant

v.

STATE of Oklahoma, Appellee.

No. F–97–588.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1998.

Jay McCown, Oklahoma City, for defendant at trial and for Appellant on appeal.

Jonathan Nichols, Michael McDaniel, Assistant District Attorneys, Cleveland County, Norman, for State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, Attorneys for Appellee on appeal.

## OPINION

CHAPEL, Presiding Judge.

¶1 Kevin Andrew Ott was tried by jury and convicted of Count I, Trafficking in Illegal Drugs in violation of 63 O.S.Supp.1993, § 2–415; Count II, Maintaining a Dwelling House to Keep or Sell a Controlled Drug in violation of 63 O.S.1991, § 2–404(A)(6); Count III, Possession of a Firearm in the Commission of a Felony in violation of 21 O.S.Supp.1995, § 1287; Count IV, Failure to Display a Tax Stamp in violation of 68 O.S. 1991, § 450.3; and Count V, Unlawful Possession of Paraphernalia in violation of 63 O.S.1991, § 2–405(B), in the District Court of Cleveland County, Case No. CF–96–1417. In accordance with the jury's recommendation the Honorable William C. Heatherington sentenced Ott to life imprisonment without the possibility of parole and a fine of $175,000 (Count I); five years imprisonment and a fine of $10,000 (Count II); twenty (20) years imprisonment (Count III); twenty (20) years imprisonment and a fine of $10,000 (Count IV); and one year imprisonment and a fine of $1,000 (Count V). Ott appeals these convictions and sentences and raises eight propositions of error.

¶2 Ott was on parole for an Arkansas conviction. He lived in Cleveland County and was supervised in Oklahoma by Oklahoma Department of Corrections probation and parole officers. Acting on a tip from a confidential informant, probation and parole officers visited Ott's mobile home on September 12, 1996. Immediately upon entering they saw a loaded handgun on the floor next to Ott's chair. Ott and a guest, Susan Nance, were handcuffed while officers searched the trailer over Ott's objections. Officers found 102.8 grams of methamphetamine along with scales, empty baggies, and $540.00 cash.

¶3 In Proposition I Ott complains that the trial court erred in overruling his motion to suppress evidence based on the warrantless search. On June 30, 1995, Ott signed an application for Interstate Compact services,

which would allow him to be discharged and supervised in Oklahoma. As part of this Interstate Compact in which Ott agreed to be supervised by Oklahoma officers, he agreed to: "[C]omply with the Order of Parole/Conditions of Probation as fixed by both the State of Arkansas and the receiving state."[1] Ott also agreed in that document to "accept such differences in the course and character of supervision as may be provided."[2] Ott signed an August 23, 1995, agreement of conditional release with the state of Arkansas. As a condition of early release on his Arkansas conviction, Ott agreed to the following clause: "You must submit your person, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search warrant, whenever requested to do so by any [Arkansas] Department of Community Punishment officer."[3] Ott signed a Verification of General Orientation on November 7, 1995, after being accepted for supervision by Oklahoma. Ott specifically agreed to: "allow my officer to visit me at home, work or other convenient places."[4]

■ ¶4 We recognize that parolees are protected by the Fourth Amendment's requirement that a search be reasonable.[5] A reasonable warrantless search of a parolee may be justified if searching officers complied with the rules for warrantless searches promulgated by the Department of Correc-

tions and the Pardon and Parole Board.[6] The version of the pardon and parole warrantless search policy in effect at the time of this search[7] delineates seven factors which must be weighed before the district supervisor may grant approval for a warrantless search:

(1) failure to search may result in a threat to the public, employees, or offender, and (2) any activity or information provided by the offender which is relevant to whether he has violated a rule or condition and possesses contraband; (3) any prior seizures of contraband; (4) the supervising officer's experience with the offender has documented a need for close supervision; (5) the reliability of the informant and the information provided when weighing the totality of the circumstances; (6) present or past offenses for which the offender is under supervision along with the experience of the officer with the offender or any similar experiences in addition to reliability of the informant information, i.e., offender on supervision for drug and/or weapon offense and information received that the offender may be in possession of illegal substances and/or weapons; and (7) the search is not the result of an assistance request from other law enforcement officers who have been unable to obtain a

1. Defendant's Exhibit 3, Application for Compact Services and Agreement to Return.

2. Id.

3. Defendant's Exhibit 5, Order of Conditional Release.

4. Defendant's Exhibit 4, Verification of General Orientation. Ott was also under supervised probation for a conviction in Woodward County, Oklahoma. We agree with the trial court's finding that the September 12 search was not conducted pursuant to that authority. Officers were not required to comply with any restrictions on warrantless searches in the Woodward County matter before searching Ott's trailer.

5. Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

6. State ex rel. Corgan v. King, 1994 OK CR 7, 868 P.2d 743 (guidelines for parolee searches promulgated in Probation and Parole Manual are reasonable). King set forth five requirements

which an officer was required to meet, along with approval by the district supervisor, to justify a warrantless search. King, 868 P.2d at 746.

7. King cites generally the Probation and Parole Manual as its source for the five requirements. King, 868 P.2d at 745. At trial, both parties referred to the Department of Corrections Policy and Operations Manual, Search and Seizure Standard. Section III(F)(2)(a)(1) of that manual sets forth procedures for conducting a warrantless parolee search. The Policy and Operations Manual has an effective date of June 29, 1994, several months after King was published, and cites King in its references section. The warrantless search requirements in the Policy and Operations Manual were revised to take into account our discussion in King, expanding from five to seven the factors and clarifying the point in time at which they must be considered. The revised factors contain the same requirements as those set forth in King, and continue to be reasonable and valid when properly applied and used.

search warrant.[8]

■ ¶ 5 Assuming without deciding that Oklahoma officers are bound by these rules when enforcing an Arkansas parole agreement under an Interstate Compact, we find officers substantially complied with the rules before searching Ott's trailer. It is clear the district supervisor was justified in approving a warrantless search. Information provided to the officers that Ott possessed illegal substances and a gun (see Proposition II) fulfilled factor (2), as it constituted an activity provided by the offender relevant to whether he violated a condition of parole and possessed contraband.[9] Factors (3), (4) and (7) do not apply (none of the searching officers had personal knowledge of Ott or of previous seizures from him, and his parole officer did not participate in the search). Turning to Factor (5), none of the officers had previously used the confidential informant, but the information provided about Ott was accurate and reliable, weighing the totality of the circumstances. The informant is not unreliable simply because this was the first time officers had acted on information from him or her. Factor (6) is fulfilled because officers knew Ott was on parole for drug and weapon offenses and the confidential informant stated Ott possessed methamphetamine and guns.

¶ 6 Officers visited Ott to conduct a home compliance check and confirm that he was living there. The visit was prompted by a tip from a confidential informant, who said Ott was living in the trailer and had guns and drugs. Before officers left, a supervisor gave permission for a warrantless search if the circumstances required it, fulfilling the first rule requirement. Although Ott gave officers consent to enter, pursuant to the supervision agreements officers did not need his consent to enter his home. Once inside, they immediately found a loaded gun within reach of the chair in which Ott had been seated.

This was a violation of both the Oklahoma and Arkansas supervision agreements, and gave the officers reasonable grounds to search the premises.

■ ¶ 7 Probation and Parole officers must also comply with the general guidelines for conducting a reasonable search and seizure. The search of Ott's trailer was conducted by three trained officers, who avoided damaging property. The search was conducted quickly, and at a reasonable time of the evening. The search was not arbitrary, capricious, oppressive or unreasonable, nor was it conducted for purposes of harassment. Officers attempted to avoid unnecessary force or embarrassment, acting with respect for the property searched. Ott and Nance were present during the searches of the living room and kitchen, and officers testified it was not practical for them to be present during the searches of the other rooms.[10] Officers are also (1) prohibited from unreasonably invading the privacy of third parties; (2) authorized to conduct protective sweep searches on arrest; (3) prohibited from breaking and entering to conduct a warrantless search; and (4) authorized to execute warrantless searches reasonably and with particularity.[11] Officers complied with these guidelines.

¶ 8 Ott also complains that there were no exigent circumstances which would justify the warrantless search. The trial court found that exigent circumstances alone would not have justified the search, but that it was justified by the gun and information provided by the confidential informant. This remark may have misled Ott into believing that exigent circumstances are required. As the above discussion makes clear, the issue is whether officers had reasonable grounds to conduct a warrantless search of a person on probation or parole. The confidential infor-

8. *Policy and Operations Manual*, Search and Seizure Standard, III(F)(2)(a)(1), 12–13 (Exhibit B, Brief in Support of Motion to Suppress).

9. Factors (1) and (2) should be read together (see the connecting *"and"*). Ott's possession of a weapon indicated to the officers a potential immediate threat should they fail to conduct a search.

10. *Policy and Operations Manual*, Search and Seizure Standard, I(A)(1–7), 1–2 (Exhibit B, Brief in Support of Motion to Suppress).

11. *Policy and Operations Manual*, Search and Seizure Standard, III(A)(1–5), 10–11 (Exhibit B, Brief in Support of Motion to Suppress).

mation, plus seeing the gun in plain view, gave officers reasonable grounds for the search. In *King*, we determined the search was unreasonable because (a) it was conducted to aid local police who had been unable to get a search warrant themselves, and (b) it was conducted almost a month after it was requested and authorized.[12] This does not impose an "exigent circumstances" requirement on all warrantless parolee searches. Here, no other law enforcement agency was participating or interested in the search, and the search was conducted the same day it was authorized.

¶ 9 In summary, in agreeing to conditional release and supervision by Oklahoma corrections officers, Ott agreed to allow officers into his home and a warrantless search. Officers here had reasonable grounds to search Ott's trailer, and complied with the guidelines and rules promulgated by the Department of Corrections and Pardon and Parole Board. The trial court did not err in overruling Ott's Motion to Suppress, and this proposition is denied.

■■■ ¶ 10 In Proposition II Ott claims the trial court erred in overruling his demurrer to Count III, Possession of a Firearm During the Commission of a Felony. To sustain a conviction, the prosecution must show more than mere possession of the weapon. In determining whether there is a nexus between the crime charged and possession of a gun, we will review the totality of the circumstances in each case and consider factors which indicate: (1) the weapon was used to actually facilitate the commission of the offense; (2) the weapon was possessed or strategically located to be quickly or easily located for use during the commission of an offense; (3) the weapon was intended to be used if a contingency arose or to make an escape; or, (4) the weapon was to be used either offensively or defensively in a manner which would constitute a threat of harm.[13] Officers found the loaded gun next to Ott's chair in the living room, in view of the door and window. A telephone and Rolodex were on the table beside the chair, and methamphetamine and scales were found in the kitchen and Ott's bedroom. The gun was strategically located for use during the sale of drugs, and could have been used if a contingency arose or to escape. Ott's wife testified that, several weeks before the search, he shot the gun while telling her anyone that snitched on him would get in trouble. This suggests the gun was intended for use in a manner constituting a threat of harm. Evidence shows more than mere proximity and availability of the weapon, and this proposition is denied.

■■ ¶ 11 In Proposition III Ott complains the trial court erred in overruling his demurrer to Count II, Maintaining a Dwelling House to Keep or Sell a Controlled Drug. To sustain this conviction the prosecution must show that (1) Ott maintained the trailer with the substantial purpose of keeping, selling, or using methamphetamine; and (2) the activity giving rise to the charge is more than a single, isolated activity, which may be proved by circumstantial evidence of the intent to continue illicit activities at the trailer.[14] Contrary to Ott's argument, evidence supports the conclusions that the trailer was used for the substantial purpose of furthering methamphetamine sales, and the drug activity present on September 12, 1996, was not an isolated incident. Officers found 102.8 grams of methamphetamine, along with two scales and empty plastic baggies commonly used to weigh and package small quantities of the drug, and $540.00 in cash. Ott's wife testified that, while visiting a few weeks earlier, she had seen him with a bag of methamphetamine, similar to those found in the search. Evidence which established that the trailer was Ott's residence included clothing, telephone installation records, receipts, documents found in the bedroom, conflicting testimony from his own witnesses, and his statements to police when he objected to the search of his house and his bedroom. Sufficient evidence supports this conviction, and this proposition is denied.

12. *King*, 868 P.2d at 747.

13. *Pebworth v. State,* 1993 OK CR 28, 855 P.2d 605, 607.

14. *Howard v. State,* 1991 OK CR 76, 815 P.2d 679, 683.

¶ 12 In Proposition IV Ott claims his sentence of life without parole for trafficking in drugs is cruel and unusual based on the facts of this case. In *Dodd v. State*,[15] this Court upheld the statutory mandatory sentence of life without parole for trafficking in controlled dangerous substances after two or more prior drug-related convictions as not cruel and unusual. *Dodd* upheld a sentence of life without parole for Conspiracy to Traffic; by contrast, Ott was convicted of trafficking, which is not an inchoate crime. Ott had three prior drug-related convictions (see Proposition VII) and one conviction for a weapons offense. At the time of his arrest, he possessed 102.8 grams of methamphetamine, a substance commonly sold in 1/8 or 1/16 ounce packages,[16] along with paraphernalia commonly found where drugs are sold and $540.00 in cash. "This is not a minor drug offense but a major crime."[17] Ott's sentence of life without parole for trafficking in illegal drugs is not cruel and unusual. This proposition is denied.

¶ 13 In Proposition V Ott claims the trial court erred in refusing his requested instruction on the lesser included offense of Possession of a Controlled Dangerous Substance With the Intent to Distribute. Ott argues the State's evidence could support an inference that he intended to distribute the methamphetamine. Ott cites no case in which this Court has held that possession with intent to distribute is a lesser included offense of trafficking. We look at whether each crime requires proof of a fact or element which the other does not require in determining whether one is a lesser included offense of the other.[18] As trafficking has no intent element, possession with intent would not appear to be an appropriate lesser included offense. The trial court did not err in

refusing Ott's requested instruction, and this proposition is denied.

¶ 14 Ott complains in his title to Proposition VI that the trial court should have allowed him to argue that his Arkansas convictions were not separate and distinct transactions. However, in the body of the proposition Ott actually argues that his Arkansas convictions cannot support an enhanced sentence under the Oklahoma trafficking statute because they do not violate a provision of the Uniform Controlled Dangerous Substances Act.[19] The title of the Arkansas statutes under which Ott was convicted is The Uniform Controlled Substances Act. The State cites a case in which we held that enhanced punishment under Oklahoma's Uniform Controlled Substances Act is appropriate where a defendant has prior convictions under any federal or state law for controlled substances as defined in the Oklahoma Act.[20] However, the trafficking statute under which Ott was sentenced is narrower in scope, and specifically applies to convictions under the trafficking act. We will not apply the general sentencing enhancement provision of the Controlled Substances Act to Ott's trafficking conviction. Nevertheless, we find that Ott's sentences were properly enhanced with his prior convictions for violations of Arkansas' Uniform Controlled Substances Act. Ott offers nothing but the Arkansas statute section title to support his claim that those were not convictions under the Uniform Controlled Dangerous Substances Act. Where the substance of the statutes is comparable to the Oklahoma's Uniform Controlled Dangerous Substances Act, we will not say the absence of the word "Dangerous" removes the convictions from the enhancement provision. We believe such a hypercritical reading of the text of the trafficking statute would contra-

---

15. *Dodd v. State*, 1994 OK CR 51, 879 P.2d 822, 826–27. I concur in the decision in this case based upon *stare decisis*. I dissented in *Dodd*.

16. One ounce contains approximately 28 grams.

17. *Dodd*, 879 P.2d at 827.

18. *Wilson v. State*, 1982 OK CR 118, 649 P.2d 784, 786.

19. A defendant previously convicted of two or more felony violations of the Oklahoma Trafficking in Illegal Drugs Act, or any provision of the Uniform Controlled Dangerous Substances Act, or a combination of violations arising from separate and distinct transactions, is eligible for the sentence of life without parole. 63 O.S.Supp. 1993, § 2–415(D)(3).

20. *Patterson v. State*, 1974 OK CR 166, 527 P.2d 596, 601.

dict the plain intent of the Legislature in enacting this provision. This proposition is denied.

¶ 15 In Proposition VII Ott claims the trial court erred in allowing the Arkansas convictions for the purpose of sentence enhancement. He first argues there was no certified copy of the Judgment in those cases. The record does not support this claim; a cursory examination of the exhibit shows it was properly certified by the Deputy Clerk of Baxter County in Arkansas. Ott then claims he should have been allowed to argue that the two Arkansas convictions were not separate and distinct transactions (see the reference above to his Proposition VI title). During the second stage the State introduced (1) evidence of Ott's identity; (2) a certified copy of an October 3, 1993, Judgment and Sentence for Possession of Controlled Dangerous Substance with Intent to Distribute from Woodward County, Oklahoma; and (3) a certified copy of January 12, 1995, Judgments and Commitment Orders for Possession of a Controlled Substance, Manufacture of a Controlled Substance (Marijuana), Possession of a Firearm, and Wife Battery from Baxter County, Arkansas. Ott introduced no evidence but attempted to argue in closing that the Arkansas convictions arose out of the same transactions because they have the same case number and occurred on the same day. The trial court sustained the State's objection to this argument.

■ ¶ 16 Ott cites *Watkins v. State* [21] to support his argument that his convictions arose from the same transaction and thus could not support an enhanced sentence under the trafficking statute. In *Watkins* we held convictions for conspiracy and possession with intent to distribute could not stand where the defendant shipped a single package containing two types of drugs. This case is in no way analogous. There was no evidence presented that Ott's Arkansas convictions arose from one act, and the mere fact the offenses occurred on the same day and share a case number will not support that inference. Pages 6 and 9 of State's Exhibit 56, submitted to the jury to prove the second page allegations, indicate that while the manufacturing charge was for marijuana, the possession with intent charge was for methamphetamine. The evidence presented at trial did not support Ott's argument, and the trial court did not err in admitting the Arkansas convictions to enhance Ott's sentence. This proposition is denied.[22]

■ ¶ 17 In Proposition VIII Ott argues the trial court erred in allowing the State to amend the enhancement page, over his objection, before the second stage of the trial began. The enhancement page of the Information originally charged Ott with a conviction for Unlawful Distribution of Controlled Drug from Woodward County, Oklahoma. After the jury had reached a verdict on guilt, but before it was announced or the second stage had commenced, the State amended the Information, charging Ott with a prior conviction for Unlawful Possession of a Controlled Substance. Ott attempts to argue that this amendment violated his right to notice of the charge against him and that he did not know what he must defend against in time to prepare a second stage defense.[23] The record shows Ott received timely discovery of a copy of the Woodward County Judgment and Sentence, reflecting the correct charge as contained in the amended Information. The trial court did not err in ruling that Ott had notice of the charges and knew what he must defend against. Ott cannot show he was prejudiced by this ruling. This proposition is denied.

### Decision

¶ 18 The Judgments and Sentences of the trial court are **AFFIRMED.**

**21.** 1991 OK CR 119, 829 P.2d 42, *modified*, 1992 OK CR 34, 855 P.2d 141.

**22.** As the State notes, even if Ott were correct he would have no relief. The trafficking enhancement statutes require two or more felony convictions under the Uniform Controlled Dangerous Substances Act or the trafficking statutes. The State introduced evidence of three drug convictions, including one from Oklahoma and two from Arkansas. Even if only one Arkansas conviction were introduced, evidence of two convictions would support Ott's sentence of life without parole.

**23.** *Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 985.

STRUBHAR, V.P.J., and LUMPKIN and JOHNSON, JJ., concur.

LANE, J., concurs in result.

