2006 OK CR 13

**William George DUFRIES, Appellant**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–2004–199.**

Court of Criminal Appeals of Oklahoma.

April 13, 2006.

Jack McCurdy, Yukon, OK, counsel for appellant at trial.

Paul Hesse, Assistant District Attorney, Canadian County, El Reno, OK, counsel for the State at trial.

Katrina Conrad–Legler, Norman, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, John W. Turner, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

## OPINION

LUMPKIN, Vice–Presiding Judge.

¶ 1 Appellant, William George Dufries, was tried by jury in the District Court of Canadian County, Case Number CF–2003–76, and convicted of Trafficking in a Controlled Dangerous Substance (67.3 pounds of marijuana), in violation of 63 O.S.Supp.2003, § 2–415, after former conviction of two drug-related felonies. The jury set punishment at the statutorily mandated sentence of life imprisonment without the possibility of parole, along with a $50,000.00 fine. The trial judge sentenced Appellant in accordance with the jury's determination, while also assessing court costs and incarceration fees. Appellant now appeals his conviction and sentence.

¶ 2 Appellant was driving an RV on the shoulder of I–40 at 78 m.p.h. in a 70 m.p.h. zone at 5:30 a.m. While proceeding to make a stop, Oklahoma Highway Patrol Trooper Pettigrew also noticed Appellant had a broken taillight.

¶ 3 Pettigrew approached the RV and signaled Appellant to roll down his window. Appellant appeared to be concealing something and only rolled the window down a few inches. Pettigrew noticed the strong smell of baby powder and cologne, a "sickening" amount, which Pettigrew knew were often used to mask a drug smell. Pettigrew asked for Appellant's license and registration, and Appellant nervously complied. As he reached over for these items, Pettigrew leaned in closer and smelled marijuana. This fact was not mentioned in his written report, although he did testify to it at the preliminary hearing. While the court said this was suspicious, he ultimately ruled the officer's preliminary hearing testimony overcame that suspicion.

¶ 4 As a safety precaution, Pettigrew had Appellant exit the RV and sit in his car. Pettigrew eventually issued Appellant a warning. While doing so, he asked Appellant about his travel plans. Appellant gave inconsistent stories about his travels in California. Pettigrew testified Appellant was not free to

leave after the warning was issued because he had smelled marijuana.

¶ 5 Pettigrew issued the warning, then asked Appellant if he had drugs in his RV and if he could conduct a search. Appellant denied possession and refused permission to search. Pettigrew then ran his drug dog partner around the RV, and the dog alerted on the vehicle twice. Pettigrew asked Appellant about this, and Appellant eventually admitted drugs were in the driver's side door. An ensuing search revealed drugs there and in cardboard boxes inside the RV bathroom, 67.3 pounds of marijuana, with baby powder sprinkled on the boxes.

¶ 6 In proposition one, Appellant claims the trial judge erred in denying the motion to suppress because the evidence against Appellant was unlawfully obtained in violation of the U.S. and Oklahoma Constitutions. The gist of this claim is that the officer's actions were pretextual, a subterfuge for detecting illegal drugs.

¶ 7 The record shows Pettigrew is indeed focused upon the search for illegal drugs and is not really in the business of issuing traffic citations. During the year prior to his testimony, Pettigrew made 2,400 traffic stops, but issued only two tickets. Of those 2,400 stops, more than 50% were for vehicles with out-of-state driver's licenses. Pettigrew testified this was a numbers game. The more people he stopped, the greater his chances of locating a "bad guy".

¶ 8 Nevertheless, in *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996), the United States Supreme Court recognized, in terms of the initial justification for a traffic stop, that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Here, there is no dispute that a traffic violation, indeed several traffic violations, occurred.

■ ¶ 9 Appellant asks the Court to focus on the police officer's subjective intentions. However, the Supreme Court rejected that idea in *Whren*, holding that where an officer has probable cause to believe a traffic violation has occurred, his subjective motivation

for stopping the vehicle is irrelevant to the legality of the stop. "Subjective intentions play no role in ordinary probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813, 116 S.Ct. at 1774. Thus, if the officer's actions were "objectively justifiable behavior," because the officer had probable cause to believe a driver had violated some traffic law, stopping the driver's vehicle is lawful regardless of the officer's subjective motivation for the stop. *McGaughey v. State*, 2001 OK CR 33, ¶ 25, 37 P.3d 130, 136–37.

■ ¶ 10 Here, the Trooper had objectively justifiable reasons for pulling Appellant over, and he had clear reasons for expanding the scope of his inquiry and eventually making an arrest. *McGaughey*, 2001 OK CR 33, ¶ 27, 37 P.3d at 137. Appellant's movement in the car prior to officer contact, his nervous demeanor, his rolling down the window but a few inches, the sickening smell of baby powder and cologne, and the smell of marijuana all worked together to justify the Trooper's actions and create probable cause to make an arrest, even without the added fact of the drug dog hitting on the car twice. There was no Fourth Amendment or other violation of the U.S. or Oklahoma Constitutions.

¶ 11 In proposition two, Appellant claims his conviction was improperly enhanced because the State failed to prove his two prior *federal* convictions were applicable to the Oklahoma's version of the Uniform Controlled Dangerous Substances Act (UCDSA). Appellant had two prior federal convictions, for conspiracy to violate the controlled substances act and for possession of marijuana with intent. Appellant's specific claim is twofold: **first,** that the State failed to prove the convictions would have been felonies in Oklahoma; and **second,** that out of state felonies are not included in the specific enhancement provisions of the UCDSA. But these claims ultimately fail.

¶ 12 Regarding the first claim, we begin by noting that Appellant's very capable attorney never raised this claim at trial—that the federal felonies would not have qualified as felonies in Oklahoma. Furthermore, after the federal felonies were admitted and the State presented its case in second stage, the

defense did not demur. Thus, the issue should be considered waived, absent plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693.

■ ¶ 13 Additionally, while the State has the burden of proof to prove prior convictions, the prior felonies were, as the State puts it, "obvious felonies" in this state. In 1988, Appellant pled guilty to the crime of conspiring with four others over a two year time period in Georgia to violate the U.S.Code "by knowingly and intentionally possessing with the intent to distribute and distributing cocaine, a Schedule II substance". This would be a violation of 63 O.S.2001, § 2–408, a felony, both now and in 1986. Also, in 1996, Appellant pled guilty to the crime of possessing 166 pounds of marijuana with the intent to distribute in Kansas. This is more than six times the amount for trafficking in Oklahoma and a violation of 63 O.S.2001, § 2–415, a felony. It would also be a violation of 63 O.S.2001, § 2–401, a felony. As Appellant's prior federal felonies were obvious felonies in this state, no relief is necessary.

■ ¶ 14 Secondly, Appellant claims that under the "plain language of the drug statutes, he should not have faced the enhanced punishment given with this case." He claims the "Legislature clearly included only drug convictions in the State of Oklahoma, not from other jurisdictions, for the purpose of enhancement under the pertinent statute, 63 O.S.2001, § 2–415(D)." However, a plain reading of the statutory language does not support this claim.

¶ 15 According to section 2–415(D)(3), the enhancement provision and applicable punishment are as follows:

> If the person has previously been convicted of two or more violations of this section or any provision of the Uniform Controlled Dangerous Substances Act which constitutes a felony, or a combination of such violations arising out of separate and distinct transactions, life without parole.

Appellant has not been convicted of two or more violations of "this section," i.e., the Trafficking in Illegal Drugs Act. Also, his two prior convictions are not *technically* violations of "any provision of the Uniform Controlled Dangerous Substances Act". Although the two jurisdictions where the crime occurred (Georgia and Kansas) have both adopted the Uniform Controlled Substances Act, Appellant's previous convictions were for violating provisions of the U.S.Code. The United States is not listed as a jurisdiction that has adopted the Uniform Controlled Substances Act.

¶ 16 Nevertheless, it is almost certain that the Uniform Controlled Substances Act was patterned after the U.S.Code provisions or that they were simultaneously drafted. The language, construction, crimes, and penalties are similar in both. Moreover, the Uniform Act and U.S.Code provisions were both enacted in 1970. Had Appellant not been prosecuted for his prior crimes by the federal government, Kansas and Georgia surely would have prosecuted him for violating the Uniform Controlled Substances Act. There is no logical reason to treat his prior federal convictions any differently than we would prior state convictions.

¶ 17 We have two relevant cases on this issue. In *Ott v. State*, 1998 OK CR 51, ¶ 14, 967 P.2d 472, 477, the Court held that the defendant's trafficking conviction was properly enhanced with his prior convictions for violations of Arkansas's Uniform Controlled Substances Act. The Court reasoned that the substance of the two state acts was comparable and that it would not use a hypercritical reading of the text of the trafficking act in order to defeat the Legislature's plain intent. The same reasoning applies here.[1]

¶ 18 Also, in *Patterson v. State*, 1974 OK CR 166, ¶ 11–12, 527 P.2d 596, 600, the Court found prior federal drug convictions *could* be used to enhance punishment under the UCDSA. The case is somewhat distinguishable, because enhancement was sought under a different provision, not the more specific Trafficking in Illegal Drugs Act, which is a

1. The trial court reviewed *Ott* and rejected Appellant's claim that federal convictions could not be used for enhancement.

subsection of Oklahoma's version of the Uniform Controlled Substances Act. Nevertheless, the case is relevant by analogy and because it references 63 O.S.Supp.1971, § 2–412, which provided (and still provides) that, "[a]n offense shall be considered a second or subsequent offense under this act, if, prior to his conviction of the offense, the offender has at any time been convicted of an offense or offenses under this act, under any statute of the United States, or of any state relating to narcotic drugs, marihuana, depressant, stimulant, or hallucinogenic drug, as defined by this act."

¶ 19 The point is this: There is no logical reason to treat Appellant's prior federal drug convictions any differently than we would prior state convictions that could have been prosecuted by Kansas and Georgia under their versions of the Uniform Controlled Substances Act. Reading Oklahoma's version [2] of that Act as a whole, we find a legislative intent to treat prior drug offenses as a second or subsequent offense no matter whether they have been prosecuted by another state under the Uniform Act or by the United States under comparable provisions of the U.S.Code.

■ ¶ 20 In proposition three, Appellant claims the trial court erred when it did not give the requested jury instruction on the crime of possession with intent to distribute as a lesser-included offense. However, we find the trial judge did not abuse his discretion in failing to give a jury instruction for possession with intent to distribute as a lesser-included or lesser-related crime to the charged crime of trafficking. *See Ott,* 1998 OK CR 51, ¶ 13, 967 P.2d at 477 (finding possession with intent to distribute "would not appear to be an appropriate lesser included offense" to the crime of drug trafficking).

■ ¶ 21 In propositions four and six, Appellant claims his sentence is excessive. He first claims his mandatory sentence of life imprisonment without the possibility of parole for trafficking in a controlled dangerous

substance after two former drug-related convictions is excessive, does not bear a direct relationship to nature and circumstances of the crime, and violates Appellant's protection under the federal and state constitutions against cruel and/or unusual punishment. He then raises an excessive sentence claim again, primarily focusing on his $50,000 fine, his incarceration fees, and to point out that this Court "has the authority" to modify punishment by reducing the years to reflect the circumstances of the crime.

¶ 22 Similar excessiveness claims were raised and rejected in *Ott,* 1998 OK CR 51, ¶ 12, 967 P.2d at 477 and in *Dodd v. State,* 1994 OK CR 51, ¶ 12–17, 879 P.2d 822, 826–27. We find those cases control. Appellant's mandatory sentence of life imprisonment without the possibility of parole and $50,000 fine for trafficking in illegal drugs after two prior drug-related convictions does not shock the Court's conscience. *See Rea v. State,* 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149 (rejecting proportionality review on the basis that "[l]egislatures, not courts, define punishment"). Also, incarceration fees of $9,800 were properly awarded.

¶ 23 In proposition five, Appellant claims he received ineffective assistance of trial counsel. He presents three examples to support that claim, but these are based almost entirely on hearsay and speculation. Appellant has failed to show errors by counsel that were so serious as to deprive him of a fair trial, one with a reliable result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). And finally, with respect to proposition seven, we find no cumulative error.

### DECISION

¶ 24 The judgment and sentence is hereby **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

**2.** The Uniform Controlled Dangerous Substances Act and its subpart, the Trafficking in Illegal Drugs Act.

C. JOHNSON, A. JOHNSON and LEWIS, JJ.: concur.

CHAPEL, P.J.: concur in part/dissent in part.

CHAPEL, Presiding Judge, Concurs in Part/Dissents in Part.

¶ 1. I concur in affirming the conviction in this case. However, I am of the opinion that the mandatory life sentence violates the Oklahoma Constitutional Prohibition against "cruel or unusual" sentences. See my dissent in *Dodd v. State*, 1994 OK CR 51, 879 P.2d 822, 828–830, (1994).